THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLES FELTERS, Defendant-Appellant.

Second District   No. 75-390

Opinion filed May 12, 1977.

Frank Wesolowski, Jr., Public Defender, of Wheaton (Robert H. Heise, Assistant Public Defender, of counsel), for appellant.

John J. Bowman, State's Attorney, of Wheaton (Malcolm F. Smith, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE BOYLE delivered the opinion of the court:

The defendant, Charles Felters, appeals from a conviction for the offense of armed robbery entered against him following a bench trial in Du Page County, Illinois. Defendant alleges that his guilt was not proved beyond a reasonable doubt, that the admission of a certain wallet was error, and that the sentence of 7 to 14 years was erroneous inasmuch as the judge pronounced a sentence of 7 to 10 years at the time of sentencing and the transcript so shows.

The State presented four witnesses. Roger Bergan testified that on September 23, 1974, he was working as an attendant at the Martin Gas Station on Lake Street in Addison, Illinois, and that at about 4:40 a.m., a black male, driving a silver Toronado car, entered the gas station driveway. The occupant purchased gasoline, paying for same, and thereafter came up behind Bergan displaying a black automatic pistol and took the station's money, amounting to approximately $90, all in singles, as well as Bergan's wallet. He further testified that the black male was wearing a dark coat and an Afro-style haircut and appeared to be about 5'8" or 5'9" and pretty well built. He testified that the man was observed by him for a total time of some two or three minutes, and he said that he paid particular attention as he felt something was going to happen. He further testified that the weapon was a black automatic pistol and that he was fairly familiar with weapons. His description of the automobile was detailed, and the description of the automobile and the subject person were phoned to the police immediately following the incident. Later in the morning, some four or five hours after the events at the gasoline station, Bergan was taken to the Franklin Park Police Station and shown six photos of black male persons of similar size, skin coloring and hair style. He thereupon selected the photo of the defendant from the six displayed photographs. Immediately thereafter, he viewed the defendant in the company of two police officers through a two-way mirror and identified him as being the same person who was the occupant of the car and who had committed the robbery. He qualified his testimony by stating that he was reasonably certain that the defendant was the same individual he had seen at the station and in the photographs.

The State next presented Detective Robert Morris, who testified that he was on duty in an unmarked squad car when the call was received regarding the alleged armed robbery at the Martin Gas Station and that he (witness) took off in pursuit of a car meeting the description phoned in, specifically being a silver Toronado car, which he followed for some distance. In the chase, two road-blocks were run, and as the car which the witness was pursuing went around a corner, the detective lost the view for a few seconds, as he was engaged in making the turn. After completing the turn, he observed the car still moving in a slow manner, but which was then unoccupied. He further testified that previously he had observed its being operated by a black male driver. Upon approaching the car, the station attendant's wallet was observed on the front seat.

Officers Iovanelli and Flood of the Franklin Park Police Department testified that they were dispatched to the Milwaukee Railway yard, which is approximately 2½ miles from the place where the chase had ended earlier that morning. The call was received in the area of 10 a.m. and concerned a man with a gun. The witnesses testified that they observed a male Negro standing outside an automobile pass a newspaper from which the butt of a revolver or pistol was visible to the driver of the car. The black male Negro was arrested and a black pistol had been thrown to the ground outside the car. Seven shells were recovered from the pistol. After being taken to the police station, $86 in one-dollar bills was found in the possession of the black male subject, who is the defendant in this case. After being advised of his rights, the defendant complained of a wound in his leg and was taken by Officer Iovanelli to the hospital for treatment. In the course of the ride to the station, and after being advised of his rights, the defendant was asked a question as to whether or not he remembered being in an auto chase that previous night. He answered affirmatively. In answer to another question as to whether he had committed an armed robbery on the previous night, the defendant stated, "It wasn't worth it."

■■ ■ Viewing this record in its totality convinces us that the conviction of the defendant, Felters, was proved beyond a reasonable doubt. The trial court was the trier of the facts and had the opportunity to hear and observe the manner and demeanor of the witnesses in testifying. The identification of Felters by the gas station attendant, Bergan, was based upon his being viewed in a well-lighted area for two or three minutes at a time when the attendant testified he was paying particular attention. The same witness selected the defendant's photo from a total of six photos of black male Negroes of similar size, skin coloring and hair style. Defendant complains that because that witness qualified his identification by stating he was "reasonably certain" that defendant was the same person as the person who committed the robbery that

no identification was sufficiently made to sustain a conviction. We disagree. The qualification made by the witness goes to weight of the evidence only and we must assume was fully considered by the trial judge together with all of the other evidence in this case. The finding of the trial court in matters of weight of evidence and credibility will not be disturbed on review unless the evidence is so unsatisfactory as to raise a reasonable doubt of defendant's guilt. *People v. Wilson* (1976), 36 Ill. App. 3d 946, 344 N.E.2d 756; *People v. Henley* (1976), 36 Ill. App. 3d 223, 343 N.E.2d 656.

■■ The contention made that the wallet recovered from the seat of the silver Toronado was not connected to the defendant is not well taken. Defendant overlooks the fact that he, himself, admitted to Detective Iovanelli that he had been involved in a high-speed chase that previous night. The wallet was taken from the seat of the silver Toronado auto by Officer Morris, who testified that the car was driven by a black male subject as it turned the corner "out of his sight for a split second" and the auto was still moving when he entered it and found it empty except for Bergan's wallet. Attendant Bergan placed the defendant in that self-same car just moments before the high-speed chase began and which culminated in the recovery of Bergan's wallet and the car. It strains reason to say that there was no connection between defendant and the wallet.

The final contention of the defendant is that an improper mittimus, based upon an error in the sentence form, was issued by the trial court. The actual judgment pronounced by the court at the sentence hearing was 7 to 10 years. The judgment order, the clerk's docket and the mittimus all recited a sentence of 7 to 14 years. Defendant contends he should be detained on the judgment pronounced by the judge and not the sentence form or mittimus which followed.

Two recent Illinois Appellate Court cases are dispositive of this issue.

This court in *People v. Peatry* (1976), 38 Ill. App. 3d 332, 347 N.E.2d 169, allowed the trial court to correct the record after the notice of appeal was filed to make it comport with the court's apparent intention to impose concurrent sentences on each of defendant's separate convictions. In *Peatry*, the defendant was found guilty of murder, attempt to commit murder and armed robbery. A term of imprisonment was fixed at "minimum 40 years—maximum 120 years." The judgment and mittimus were amended by the trial court after the notice of appeal was filed to recite, "minimum 40 years—maximum 120 years to each charge of murder, attempt to commit murder, armed robbery—sentences to be served concurrently."

In *People v. Johnson* (1976), 42 Ill. App. 3d 425, 355 N.E.2d 699, the appellate court disallowed the trial court's amendment of the record after trial and the filing of the notice of appeal. The court found the affidavit of

the prosecutor was not sufficient to amend the record after the filing of the notice of appeal. The court here applied the principle as enunciated in *In re Application of County Collector* (1974), 18 Ill. App. 3d 272, 277, 309 N.E.2d 722, 725, wherein the court stated:

> "[T]o amend a record after trial * * * [requires] the production of some note or memorandum either from the records of the court, or by the minutes of the judge, or by the document on file in the cause, not by the memory of witnesses, the recollection of the judge, or by supporting affidavits."

Thus, the trial court in *Johnson* could not amend the record after trial because there was no note or document in the record to substantiate a revision by the court. In our case, unlike *Johnson*, there is a clear expression in the record of the sentence in the mittimus and the judgment order that supports an amendment or revision in the record after trial. However, the mittimus and judgment order conflict with the trial court's clear pronouncement from the bench at sentencing.

Here, the trial court under *Peatry* would have been free to amend the record to comport with the true sentence the court intended to impose, even though a notice of appeal had been filed and an appeal had been taken. (See also *People v. Glenn* (1962), 25 Ill. 2d 82, 182 N.E.2d 670.) The trial court, however, did not exercise this right to amend the record.

■■ Therefore, we remand this cause to the trial court to correct the record. The amended sentence should reflect a consistency in the record and the trial court's true intention in imposing a sentence for this conviction.

Judgment of conviction affirmed; cause remanded for modification of sentence.

*Affirmed in part and remanded.*

RECHENMACHER, P. J., and SEIDENFELD, J., concur.