**People of the State of Illinois, Plaintiff-Appellee, v. George W. Hankins, Defendant-Appellant.**

**Gen. No. 51,068.**

First District, Second Division.

December 1, 1967.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Carolyn Jaffe and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County (Elmer C. Kissane and Eldridge Hersey, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BRYANT delivered the opinion of the court.

The appellant, George W. Hankins, ("defendant" herein) was tried by the court and convicted of attempted rape.

On appeal defendant contends, (1) that the testimony of the complaining witness was neither sufficiently clear and convincing nor sufficiently corroborated to establish the defendant's guilt beyond a reasonable doubt; (2) that the specific intent to commit rape was not established beyond a reasonable doubt; and, (3) that rulings of the trial court effectively deprived defendant of his right to confrontation.

The complaining witness, Miss Donna Marie Bowling, testified as follows: Early in the morning of July 22, 1965, she was sleeping alone in her bedroom at 2923 West 24th Street, Chicago, Illinois. Her parents and her brother were asleep in nearby rooms of the apartment. She was sleeping on her stomach when she was awakened by someone on top of her. She noticed that the lights had been turned on. The person had his hand over her mouth. He told her not to make any noise and to do what he told her or he would kill her. The man cut off her pajamas and underwear with a pair of scissors taken from her drawer. He then rolled her over and got on top of her. She opened her eyes and saw the defendant, whom she identified in court. She testified that she had seen the man walking a dog near her home about ten times prior to July 22,

53

1965. She was entirely unclothed and defendant was unclothed from the waist down. The defendant tried to force her legs apart. She cried, pleaded with him to stop and refused to open her legs. The defendant then attempted to force her to satisfy him orally. Again she refused and successfully resisted his efforts. Finally, the defendant tried to force her to masturbate him and upon her refusal he brought himself to a climax. Thereafter, the defendant told Miss Bowling he was going to leave and that she should keep her eyes closed and remain silent until she heard him leave. She kept her eyes closed for about five minutes but did not hear him leave. She then opened her eyes and finding that defendant was gone she ran to her parents' room. The police were called and came to the Bowling apartment to investigate. Miss Bowling also found that some of her possessions, including an electric razor, some clothing and some jewelry were missing.

On July 30, 1965, Miss Bowling went to the police station where she identified defendant, who had been brought in on another matter, as the man who had attacked her. She also saw and identified her electric razor at the police station. It had been recovered from defendant's home by the police.

The defendant pleaded guilty to a charge of burglary of the complaining witness' apartment. However, the defendant denied the charge of attempted rape. At trial, he testified that he was in Miss Bowling's bedroom on the night in question, that he ransacked the room and stole the razor. He testified, however, that Miss Bowling was not in the room at that time and that he saw her for the first time at the police station on July 30, 1965.

Defendant's first contention on appeal is premised on the rule stated by the Illinois Supreme Court in People v. Reaves, 24 Ill2d 380, 382, 183 NE2d 169 (1962):

"Because a charge of rape is easy to make and hard to defend, the law requires that where the accused

denies it the testimony of the prosecuting witness must either be corroborated or be clear and convincing."

Defendant argues that the complaining witness' story was neither sufficiently clear and convincing nor sufficiently corroborated to establish his guilt beyond a reasonable doubt. We find that the testimony of the witness was clear and convincing. Her testimony was also corroborated by the testimony of the defendant.

Defendant contends that the witness' testimony that defendant wore a mask over the upper portion of his face and the failure of the police report to note that she mentioned a mask to the officers who investigated the complaint weakens the reliability of her identification of defendant. The defendant's admission that he was in Miss Bowling's bedroom in the early hours of July 22, 1965, strongly corroborates her identification. The witness' description of defendant to the police at her home immediately after the attack upon her and her identification of defendant at the police station eight days after the occurrence is additional corroboration.

It is contended that inconsistencies in the witness' testimony as to when she recognized defendant as a "neighborhood man" whom she had seen previous to July 22, 1965, walking his dog near her home impeach her credibility. It is clear from the record that the witness first mentioned the fact that she so recognized defendant when she saw him at the police station eight days after the occurrence. Though the witness' testimony is not definite as to when she actually realized defendant was someone she had seen previously we do not observe any inconsistency in the testimony which renders her story either unclear or unconvincing.

██ Defendant contends that due to the mask, lighting conditions and the witness' statement that she "got a glimpse of him" the identification testimony is weak.

This contention pertains to the weight and credibility of the testimony, it does not relate to any inconsistency or improbability which would render the witness' story unclear or unconvincing.

> "It is the duty of the court in a bench trial to determine the credibility of the witnesses and the weight to be given their testimony, and unless the evidence is so improbable or unsatisfactory as to leave a reasonable doubt of defendant's guilt, the finding of the court will not be disturbed." People v. Reaves, Supra, at 382.

Defendant contends that the failure of the witness to cry out so as to arouse her family during the attack renders her story unconvincing. According to Miss Bowling's testimony the defendant said that he would kill her if she did not do as told. In view of such a threat her story is not made less convincing by the fact of her failure to scream or call out. See People v. Butler, 80 Ill App2d 265, 225 NE2d 493 (1967).

■ The defendant also contends that failure of the State to bring in the cut and torn clothing of the complaining witness, fingerprint analysis of the scissors with which her clothing was cut and the soiled bed sheets gives rise to an inference that the evidence would have been unfavorable to the State or is nonexistent. The State is not required to introduce all evidence which might be admitted, especially where that evidence would have merely strengthened testimony which the State did introduce. See People v. Mack, 25 Ill2d 416, 185 NE2d 154 (1962).

■ Defendant's second contention is that the specific intent to commit rape is not established by the testimony. Miss Bowling's testimony was that defendant had his hand over her mouth, that he had a scissors in his hand, that he told her to do what he told her or he would kill her, and that he tried to force her to open her legs.

The credibility of this testimony was for the determination of the trial court. If believed, the testimony very amply demonstrates intent to commit rape.

Defendant's third contention is that the court's refusal to allow defendant to examine certain police reports and the court's refusal to allow certain questions in cross-examination of Officer Lorenz denied defendant the right of confrontation of witnesses against him as guaranteed by the United States Constitution. The police reports in question were a report made by Officer Kary who interviewed Miss Bowling on July 22, 1965, and a report by an Officer Nowicki, who was present on July 30, 1965, when Miss Bowling identified the defendant at the police station. During cross-examination of Miss Bowling and of Officer Lorenz the defense moved for production of these reports. The court examined these reports, concluded that they contained no verbatim statements of the complaining witness and advised counsel that the reports would only be made available later for purposes of cross-examination of the reporting officers. The officers were not called and the reports were not available to the defense until the close of the trial when they were made a court's exhibit. Defendant argues that the purpose for which the reports were sought was the impeachment of the complaining witness rather than for impeachment of the reporting officers, who were, in fact, not called to the stand to testify.

██ The defendant maintains that the doctrine laid down in Pointer v. Texas, 380 US 400 (1965) requires that the reports should have been given to the defendant. That case included the introduction into evidence by the State of a transcript of a robbery victim's statement without affording the defendant the right of cross-examination at either the taking of the statement or at trial. The U. S. Supreme Court held this to be a denial of due process under the Fourteenth Amendment in that it was a denial of the accused's right to confront the witness against him.

No such problem is presented in the instant case. The police reports were not admitted into evidence against the defendant and the complaining witness was at trial and was cross-examined at some length by the defense.

██ The applicable Illinois law on this matter is set forth in People v. Wolff, 19 Ill2d 318, 167 NE2d 197 (1960) cert den, 364 US 874 (1960), and People v. Wright, 30 Ill2d 519, 198 NE2d 316 (1964). In the Wolff case the Illinois Supreme Court said:

> ". . . [W]e adopt the view that where no privilege exists, and where the relevancy and competency of a statement or report has been established, the trial judge shall order the document delivered directly to accused for his inspection and use for impeachment purposes. However, if the prosecution claims that any document ordered to be produced contains matter which does not relate to the testimony of the witness sought to be impeached, the trial judge will inspect the document and may, at his discretion, delete unrelated matters before delivery is made to the accused."

In the case at bar the State argues, and we agree that the reports were properly denied for failure of the defense to lay adequate foundation.

██ In People v. Wolff, supra, it was said, at p 328:

> "In determining whether an accused has been prejudiced by the rejection or exclusion of evidence, so as to require a reversal of the judgment, this court will look to the entire record to see if the rejected evidence could have reasonably affected the verdict, (People v. Terrell, 262 Ill 138), and will refuse to disturb the judgment where guilt is shown beyond a reasonable doubt or where, upon the evidence, the jury could not have reached a different verdict. (People v. Dunham, 344 Ill 268; People v. Marmon, 389 Ill 478, certiorari denied 326 US 725.)"

58

The reports and defendant's argument upon them indicate that any possible impeachment of Miss Bowling's testimony which reference to them might have yielded would have concerned the witness' identification of defendant as the man who was in her room and assaulted her on July 22, 1965. Defendant refers to Officer Kary's notation that Miss Bowling indicated the defendant left her apartment through her bedroom window and contends that this impeaches her testimony that she did not see defendant leave the room. The defendant also contends that the absence of any mention in the police report that the defendant wore a mask could be used to impeach her testimony that defendant was wearing a mask. Finally, defendant contends that Officer Nowicki's report which indicated that three men were present when Miss Bowling identified the defendant should have been available for the impeachment of Officer Hanna's testimony to the effect that ten or twelve men were present. As we have indicated in discussion of defendant's first contention, any doubts regarding Miss Bowling's identification of defendant are overcome by the defendant's admissions at trial that he was present in her room at the time in question. In view of this we fail to see how defendant could have been substantially prejudiced by denial of his motion for production of the police reports.

▆▆▆▆▆▆ Finally, we turn to the defendant's contention that the court's refusal to allow certain questions in cross-examination of Police Officer Lorenz was a denial of the right to impeach the complaining witness. The questions concerned the location and condition of Miss Bowling on July 30, when she was brought to the police station to identify the defendant. Defendant argues that he should have been allowed to elicit any answers which might have indicated either bad character or the inability of her identification of the defendant due to drunkenness. In a trial for rape the immoral character of the witness can only be shown by proof of general reputation in order to

show probability of consent, only after a proper foundation is laid, and specific acts of misconduct may not be testified to. People v. Fryman, 4 Ill2d 224, 229, 122 NE2d 573 (1954). People v. Collins, 25 Ill2d 605, 611, 186 NE2d 30 (1962), cert den 373 US 942 (1963). The purpose of the questioning which was clearly intended to discredit the moral character of the complaining witness far outweighed any value it may have had as to the identification of the defendant in view of his plea of guilty to the burglary charge. The court's refusal to allow the question was proper.

The judgment is affirmed.

Judgment affirmed.

LYONS, P. J. and BURKE, J., concur.