THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
PHIL HILL, Defendant-Appellant.

Second District   No. 77-47

Opinion filed March 29, 1978.

Ralph Ruebner and Mark Schuster, both of State Appellate Defender's Office, of Elgin, for appellant.

Gene L. Armentrout, State's Attorney, of Geneva (Phyllis J. Perko and Martin P. Moltz, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

The defendant was convicted of armed robbery, and was sentenced to a term of 4 years to 4 years and one day in the penitentiary. He appeals, contending that the prosecutor committed reversible error in his cross-examination of the defendant, by forcing him to judge the veracity of the witnesses against him, and by telling the jury in closing argument that the defendant was a liar.

The complaining witness, Robert Greenwood, testified he knew the defendant slightly as a result of the defendant having lived in the same apartment building as Greenwood for a short time. During the months of December 1975, and January 1976, the defendant and he had seen each other occasionally and the defendant had visited once or twice in his apartment and he had driven the defendant to work and elsewhere a few times. The defendant, not long before he moved out, according to Greenwood's testimony, had asked to use Greenwood's phone to make a long distance telephone call to Kansas, for which Greenwood had given permission. The charge for this call had not been paid for by the defendant at the time he moved out. (The defendant denied this, claiming he had paid the telephone charge.)

Greenwood testified that at the time of the robbery, April 6, 1976, he had just returned home from work when he heard a knock on the door. Answering it he saw the defendant who said he had come to pay back the money for the telephone call. After saying that, the defendant suddenly reached down into his jeans and came up with a knife, which he pointed at Greenwood's throat. Greenwood testified he was forced at the point of the knife to retreat into the apartment, where the defendant forced him to lie on the bed and put his head under the mattress. After searching the apartment, the defendant asked Greenwood where he kept his money and when Greenwood answered he kept it in his pocket, the defendant forced him to give him the wallet, which contained, according to Greenwood, about $15 or $20. He also took a jar of pennies and left. Greenwood tried to call the police but found the telephone wire had been cut, so he went to another apartment and called the police.

Officer Roe of the Aurora Police Department testified that when he arrived at Greenwood's apartment, Greenwood seemed quite upset and the apartment was in a shambles. When he tried to use the telephone to call in the description of the robber, he found the phone cord had been cut. He used another phone in the building to report the description of the robber to police headquarters and it was immediately broadcast to

cruising squad cars. Officer Wennmacher testified he received a description of the robber on the radio alert and shortly afterward he saw a person answering to that description walk by on the sidewalk. He stopped the defendant and patted him down and as he was doing so, noticed a bulge in the defendant's clothing. He reached into the defendant's clothing and pulled out a wallet and a plastic bag containing credit cards, which were issued to Robert Greenwood. He did not find a knife, nor did he find any money on the defendant's person. He arrested the defendant and took him to the police station. Officer Wennmacher testified that when he made the arrest the defendant was walking east, away from the location of his residence, which was in a westerly direction from the squad car. At the police station the defendant was given the *Miranda* warnings and interrogated. Officer Wennmacher further testified that in the course of the questioning, the defendant was asked if he had threatened Greenwood with a knife. Defendant denied doing so and gave an entirely different version than that given by Greenwood as to what had happened at Greenwood's apartment. He said that earlier he had bought some marijuana from Greenwood and had paid $15 for it. The marijuana proved to be inferior and he had gone back to Greenwood's apartment and asked for his money back. He said Greenwood replied he had no money, whereupon the defendant picked up Greenwood's wallet, which was lying on the coffee table, and said he would keep it until Greenwood returned the $15 he had been paid for the marijuana. He denied threatening Greenwood with a knife or even having a knife.

Greenwood, at the trial, testified that he had never sold any marijuana to the defendant. Officer Wennmacher testified that in the course of his questioning of the defendant, the defendant, in answer to a question as to how he had gotten Greenwood's wallet, said he had just "scared him out of it," rather than threatening him with the knife. Defendant's testimony about the purchase of the marijuana was also inconsistent with his signed statement wherein he stated he took the wallet because he "just needed the money."

The defendant testified he was on his way home when he was arrested. However, Officer Wennmacher testified that the defendant was walking away from his home when he was arrested.

At the trial, in the course of cross-examining the defendant, the prosecutor noted a discrepancy between defendant's statement and the testimony of Detective Martin as to what the defendant told the detective relative to his taking Greenwood's wallet. He asked the defendant if he thought the officer was lying. Relative to another conflict between the defendant's testimony and his signed statement, the prosecutor again asked if the defendant thought the police were lying. There was no

objection by defense counsel in either case, and the cross-examination proceeded.

In his closing argument, the State's Attorney pointed out that the defendant's signed statement was at variance with his testimony at trial, and that the defendant was contending, in his testimony, that he did not make the statements attributed to him in the signed statement, which he gave to the police. The State's Attorney remarked, "Det. Martin is lying; Robert Greenwood is lying; everybody is lying but the Defendant in this case. And I ask you, ladies and gentlemen, who has everything to gain and nothing to lose by lying on the witness stand?" Again, there was no objection to this argument in the trial court.

In this appeal the defendant contends he was unfairly prejudiced by the State's Attorney's characterization of his testimony as lies. Moreover, he contends that forcing the defendant to say in his own testimony who was lying, himself or the police, was an improper tactic and was highly prejudicial. He also contends the prosecutor misstated the evidence by arguing that the defendant had admitted the elements of robbery in his signed statement. The statement contained the following:

"Q. Why did you take the mans [sic] wallet?

A. Well I just needed the money.

Q. How did you get the wallet from him?

A. I asked him where was his wallet and he said in his right hip pocket. Then I just got his wallet."

■■ It should be noted that the State's Attorney's interpretation of this passage as indicating a robbery had occurred was not objected to at the time it was made and while this language is not clearcut, it readily lends itself to the implication of robbery. The statement "I just got his wallet" was not preceded by any remark indicating an intention by either party to borrow or lend money. Moreover, the defendant's testimony was to the effect that Greenwood was "mad" when the defendant took the wallet and that he threatened to call the police. This certainly substantiates Greenwood's allegation that he had been robbed by the defendant. Since it was not objected to when made, we must assume that defense counsel did not consider the State's Attorney's remark to be an unfair rendering of the meaning of this passage—that is, that it meant the money was taken by force or threat of force. We are of the opinion that the State's Attorney's assumption that the statement indicated a robbery had occurred was not unfair, under the circumstances, and was not a misstatement of the evidence.

The defendant also complains that in the course of cross-examining him, the State's Attorney said, regarding a discrepancy between the defendant's testimony and the police statement, "Det. Martin is lying

then?" which the defendant says improperly forced him to comment on the veracity of a witness. The same objection is made as to a remark about Officer Wennmacher's testimony, "Officer Wennmacher was lying when he said the wallet was empty when he took it from you?" It is improper to attempt to force a defendant to judge the veracity of a witness against him since that invades the province of the jury. (See *People v. Hicks* (1971), 133 Ill. App. 2d 424.) However, in the context of this case we do not think the error was prejudicial to the defendant. While a new trial was granted in *Hicks*, that case involved more than an attempt to comment on the veracity of the State's witness. It also involved an attempt during cross-examination to link the defendant with previous, unrelated wrongdoing. In granting a new trial, the appellate court said:

> "Defendant's opinion as to the veracity of the witnesses neither proved nor tended to prove his guilt or innocence. Further, it is within the province of the jury to determine which witnesses, whose testimony conflicts, are telling the truth. (See *People v. Long*, 407 Ill. 210.) This cross-examination, when considered together with the prior cross-examination of defendant, was prejudicial to defendant." 133 Ill. App. 2d 424, 434.

In *People v. Meeks* (1973), 11 Ill. App. 3d 973, where the circumstances were similar to those of the present case, the court, while condemning the State's Attorney's questions as being improper, considered it not to be of such magnitude as to require a new trial. In that case, a police officer had testified that when he entered the tavern where the killing occurred, he saw someone restraining the defendant. The defendant denied anyone was restraining or holding him when the officer entered. The State's Attorney asked,

> "Q. If he used holding you or restraining you in a manner of speaking, that he was holding you, he was lying?"

The defendant, after objection by defense counsel was overruled, answered:

> "A. Yes, sir, he was."

The appellate court, in commenting on the defendant's contention that the question was prejudicial to his case said, after agreeing that the question was improper:

> "However, we do not consider the error to be of such magnitude that a new trial is required. (See *People v. Izzo*, 14 Ill. 2d 403, 151 N.E.2d 329; *People v. Laurry*, 5 Ill. App. 3d 713, 283 N.E.2d 895.) As the defense attorney pointed out in his closing argument, whether the defendant made the remark to Harden or whether he was restrained at the time the police arrived was of relatively little importance in the light of all the other evidence.* * * We

conclude that these questions, standing alone, although improper, were not prejudicial." 11 Ill. App. 3d 973, 980.

■■ In the case before us the question as to whether Detective Martin was lying went only to whether the wallet was in Greenwood's pocket or on the table when the defendant took it. Inasmuch as the defendant admitted taking the wallet, in Greenwood's presence, and removing the contents thereof, and since the wallet was found in the defendant's possession, within an hour or so afterward, and since it could not have been otherwise than against the owner's will, inasmuch as the defendant admitted that Greenwood was "mad" and said he would call the police, and did call the police, the jury had good reason to believe that the crime of robbery was committed by the defendant. The omission of the question as to Detective Martin's veracity or the subsequent question as to whether Officer Wennmacher was lying, when he said the wallet was empty, would not, in our opinion, have affected the jury's determination that the defendant was guilty of robbery, since the circumstances and the defendant's admissions tended to establish that. The only question at issue after the defendant's admissions were made was whether or not he had threatened Greenwood with a knife. That question was in no way affected by the improper questions as to the other details. The issue as to whether the defendant used a knife or merely "scared" or menaced Greenwood, was for the jury to determine and this question was not affected by the improper questions referred to. The questions were improper and we assume an objection would have been sustained, if made, but the failure to make such objection at the proper moment indicates it was not considered by defense counsel to be of critical importance. In our opinion these questions were not substantially prejudicial in the context of the whole case.

The same point is raised as to the State's Attorney's closing argument. It must be remembered that the defendant had signed a statement admitting to facts which inferred that he had committed at least a robbery. His testimony at trial suggested that the police had disregarded his actual answers to certain questions and that the officer typing the answers had substituted different answers. The defendant also contradicted Greenwood's testimony. At closing argument, the State's Attorney, after outlining the facts and the discrepancies between the stories of the victim and the defendant, said:

"Det. Martin is lying; Robert Greenwood is lying; everybody is lying but the Defendant in this case.* * * It [sic] think it's clear, ladies and gentlemen, that the defendant has been lying."

■■ The question of credibility posed as between the victim and the defendant was direct and unavoidable, and we cannot believe that the

question, "Who was lying?" did not enter the minds of the jurors during the testimony of the witnesses and long before the closing argument. That the delineation of the issue by the State's Attorney in harsh terms of "lying" materially influenced the jury in its guilty finding seems improbable to us, in view of the defendant's own admissions. Nor, apparently, did defense counsel regard it as crucial at the time it was uttered, since he did not object. In perspective, we do not find it to be substantially prejudicial when we consider all aspects of the case. While we do not condone this type of argument, standing alone it is not enough to justify a new trial.

The judgment of the circuit court of Kane County is affirmed.

Judgment Affirmed.

GUILD and NASH, JJ., concur.