THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RICHARD HASTINGS *et al.*, Defendants-Appellants.

First District (1st Division)   Nos. 77-1076 through 77-1079 cons.

Opinion filed May 21, 1979.

James J. Doherty, Public Defender, and Ralph Ruebner and Kenneth L. Jones, both of State Appellate Defender's Office, both of Chicago (John M. Kalnins, Assistant Public Defender, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Francis X. Speh, Jr., and Pamela E. Loza, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McGLOON delivered the opinion of the court:

After a jury trial Richard Hastings, Kenneth Oglesby, Mark Pierchalski, and Michael Nitz were convicted of deviate sexual assault. Mark Pierchalski was also convicted of rape. Pierchalski was sentenced to serve 30 to 60 years imprisonment. Hastings was sentenced to serve 20 to 60 years, Nitz was sentenced to serve 6 to 18 years, and Oglesby was sentenced to serve 9 to 27 years and fined $2500. All defendants appealed and their cases were consolidated for purposes of this appeal.

On appeal, all defendants argue (1) that they were denied a fair trial due to evidentiary rulings precluding Pierchalski from introducing evidence of his prior relationship with the complainant and statements made by her during the alleged incident; and (2) that their sentences are excessive. Additionally, Hastings, Oglesby, and Nitz argue (3) that the trial court erroneously denied their motion for severance; (4) that they were denied a fair trial due to improper cross-examination and prejudicial remarks made by the prosecution; and (5) that they were denied a fair trial due to the prosecutor's comment on their failure to testify during closing arguments. Lastly, Hastings argues (6) that he was denied effective assistance of counsel since he and Pierchalski were represented by the same attorney and their defenses were antagonistic.

We affirm and modify in part.

Defendants Mark Pierchalski, Richard Hastings, Kenneth Oglesby, and Michael Nitz were all charged with the rape and deviate sexual assault. Greg Wisowaty was also charged with deviate sexual assault, but was subsequently found not guilty. At trial and prior thereto, defendants Pierchalski, Hastings, and Wisowaty were all represented by the same attorney. Defendants Nitz and Oglesby were represented by a public defender.

Prior to trial, counsel on behalf of Hastings and Wisowaty moved for a severance and separate trial from defendant Pierchalski. Hastings and Wisowaty alleged that Pierchalski had made a statement implicating them and further indicated Pierchalski's defense would be antagonistic to theirs. Defendants Nitz and Oglesby then filed similar motions for severance raising the same allegations as Hastings and Wisowaty. The trial court subsequently denied these motions based on the State's representation that Pierchalski's statement would not be used during the trial.

During the hearing on the motion for severance, counsel on behalf of

Hastings and Wisowaty, renewed its motion for severance because Pierchalski was going to testify. Their counsel stated:

"There is no doubt that he [Pierchalski] would tell the truth when he says that he didn't do it. But he's going to say that the other people did. That cannot be allowed. He cannot testify to it. That, in effect, is the problem and it cannot be cured."

The court then entered the motion and continued it with the case "until such time as it becomes apparent that there is a clear danger to one of the other defendants and one of them could be prejudiced."

The State successfully sought a motion in limine precluding the introduction of any evidence of prior sexual relations between the complainant and any of the defendants. Also precluded were prior sex acts between the complainant and nondefendants.

The complainant testified that on March 18, 1976, she attended a party at the Wisowaty residence in Calumet City, Illinois. She had been invited to the party by defendant Pierchalski who had telephoned her and stated that he was a friend of Benny Johnson. Complainant conjectured that Pierchalski must have gotten her phone number from Johnson.

She testified that she was driven to the party by Pierchalski, who was accompanied by Tim Milligan. They arrived at the party at approximately 9:30 p.m. Upon entering the Wisowaty residence, the complainant observed defendants Nitz and Hastings drinking in the living room. She proceeded into the kitchen where she made herself a drink. She stated that after a while, another person, whom she identified as defendant Oglesby, came into the kitchen.

Complainant testified that approximately one hour after her arrival, she went into the bathroom. Upon coming out, Pierchalski allegedly pushed her into the bedroom and ordered her to disrobe. She stated that defendant Nitz was also in the room and prevented her from leaving. When she refused to cooperate, Pierchalski allegedly struck her. Thereafter, she took off her clothes and had intercourse with him. She further testified that Pierchalski forced her to perform oral copulation and submit to anal intercourse.

When Pierchalski had finished, Oglesby and Hastings came into the room and forced the complainant to perform oral copulation. Pierchalski then re-entered the bedroom and climbed into the bed with the complainant and the other four men. He again forced her to perform oral copulation with him.

The complainant testified that she was finally allowed to get up and go to the bathroom. She put on a robe that was hanging in the bathroom and attempted to climb out of the window located above the bathtub. However, as she attempted to escape, she was discovered by Pierchalski

and Hastings who dragged her back into the bedroom and again forced her to perform oral copulation.

Finally, Pierchalski ordered her to get dressed and warned her that her throat would be slit if she told anyone what had happened. As she left the house accompanied by defendants Pierchalski, Hastings, Nitz and Oglesby, she ran to the house next door and screamed for help. She stated that as she began screaming for help, Hastings ran up behind her and began hitting her. She was then dragged into the back seat of a waiting car and driven back to her home in Hobart, Indiana. During the trip, Hastings again forced her to perform oral copulation and threatened to kill her if she did not comply to his satisfaction. The defendants finally released her when they were approximately one block from her home.

At the conclusion of the trial, the jury found Pierchalski guilty of rape and deviate sexual assault. He was subsequently sentenced to serve 30 to 60 years imprisonment. Defendants Hastings, Oglesby, and Nitz were found guilty of deviate sexual assault. Wisowaty was found not guilty of all charges. Hastings was sentenced to serve 20 to 60 years imprisonment. Nitz was sentenced to serve 6 to 18 years imprisonment. Oglesby was sentenced to serve 9 to 27 years imprisonment and also fined $2500. Defendants appealed. On appeal, Pierchalski raises issues different than those raised by the other defendants. We shall consider his contentions first.

Pierchalski first argues that he was denied a fair trial due to evidentiary rulings that precluded him from introducing evidence that supported his defense of consent. (Co-defendants Hastings, Oglesby and Nitz had adopted this argument and incorporated it by reference into their arguments.) In support of this contention he first cites the granting of the State's motion in limine that precluded evidence concerning his prior sexual relationship with the complainant. He argues that although Benny Johnson, a defense witness, was allowed to testify that the complainant's reputation for chastity was bad, he was prohibited from answering a question about prior occasions when the complainant and Pierchalski were together. An objection was also sustained when defense counsel inquired into the complainant's sexual relationship with Johnson. Similarly, Pierchalski was prevented from testifying as to his prior sexual relationship with the complainant.

Pierchalski also cites as prejudicial to his case, the trial court's refusal to allow him to testify as to a comment allegedly made by the complainant after intercourse with him. Pierchalski was also prevented from testifying as to the statements allegedly made by the complainant as he was leaving the bedroom. These statements were relevant, Pierchalski argues, because they revealed the complainant's state of mind.

■■ ■ In Illinois, the law is clear that where the defense to a charge of

rape is consent, testimony as to the victim's reputation for chastity is admissible. (*People v. Cieslak* (1925), 319 Ill. 221, 149 N.E. 815.) The underlying rationale for the rule is that an unchaste woman is more likely to consent to intercourse than is a chaste woman. However, the immoral character of the complainant can only be shown by proof of general reputation and specific acts of misconduct are inadmissible. (*People v. Fryman* (1954), 4 Ill. 2d 224, 122 N.E.2d 573; *People v. Hankins* (1967), 90 Ill. App. 2d 51, 234 N.E.2d 104.) Here, Pierchalski called Benny Johnson who testified that the complainant's reputation for chastity was bad. While Pierchalski cites *People v. Wilcox* (1975), 33 Ill. App. 3d 432, 337 N.E.2d 211, for the proposition that previous acts of intercourse between the defendant and the complainant are to be considered in weighing the evidence against the defendant, *Wilcox* is distinguishable. There the complainant admitted having prior sexual relations with the defendant. While the court noted the significance of their prior relationship in that case, it did not say that a defendant has a right to introduce evidence indicating that such a relationship existed. As the court noted, even if the complainant had consented to intercourse with the defendant in the past, that does not mean that the complainant consented to the acts committed on the night in question. Consequently, for these reasons we do not believe that the trial court committed reversible error when it granted the State's motion in limine. Neither do we believe that the trial court erred when it precluded testimony concerning the complainant's sexual relationship with Benny Johnson.

■ As to Pierchalski's contention that the trial court improperly prevented him from testifying as to statements allegedly made by the complainant after intercourse with him and while he was leaving the bedroom, Pierchalski is correct. (See *People v. Henricks* (1975), 32 Ill. App. 3d 49, 335 N.E.2d 521.) However, in view of the overwhelming evidence of guilt, we cannot conclude that reversible error was committed. Pierchalski's admission that he struck the complainant and the examining nurse's testimony that the complainant's face was swollen and bruised are strong evidence that the complainant did not consent to what happened to her.

Pierchalski next contends that the trial court abused its discretion by refusing to consider his rehabilitative potential and imposing a sentence of 30 to 60 years where the complainant suffered no physical harm.

■ In *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882, the court held that when sentencing the trial judge should consider not only the rehabilitative potential of the defendant, but also punishment as well. Our review of the record reveals that the trial court considered both of these factors when sentencing Pierchalski. The trial judge specifically stated that he believed in rehabilitation and that he hoped Pierchalski could be

rehabilitated. However, he also stated that he believed in punishment. Considering the viciousness of the disgusting acts perpetrated against the complainant and the fact that Pierchalski was on parole for aggravated battery at the time of the incident, we find no abuse of discretion by the trial judge. While it is true that the complainant apparently suffered no permanent physical harm as a result of the attack, Pierchalski ignores the possibly deep emotional scars that the complainant may suffer for the rest of her life as a result of his actions.

Co-defendants Hastings, Nitz and Oglesby first argue on appeal that the trial court erroneously denied their motion for a severance and as a consequence, denied them a fair trial. They argue that when the attorney for Pierchalski and Hastings informed the court before trial that Pierchalski was going to deny guilt and implicate them, the trial judge should have questioned Hastings about the possibility of antagonistic defenses. In support of this contention, they cite *People v. Craig* (1977), 47 Ill. App. 3d 242, 361 N.E.2d 736. Their case was prejudiced even more, they argue, when Pierchalski took the stand and testified that after he finished having intercourse with the complainant, Hastings and Oglesby then entered the bedroom and had sex with her. As a result of Pierchalski's damaging testimony placing them in the bedroom with the complainant, they argue that they were forced to abandon their defense of mistaken identity. In addition, Hastings argues that he was denied effective assistance of counsel since Pierchalski and he were both represented by the same attorney.

■■ We disagree. From our review of the entire record, we cannot find evidence of antagonistic defenses. In fact, it appears to us that all defendants relied on the defense of consent. In his petition for severance, Hastings stated only that Pierchalski had made written or oral statements implicating him and that their defenses would conflict. Nowhere in the petition did he indicate what his defense was or in what way might there be a conflict. The only indication that Pierchalski's defense might differ from that of his co-defendants occurred during the hearing on the motion for severance when the attorney for Pierchalski, Hastings, and Wisowaty stated that Pierchalski would testify that "he didn't do it, but * * * the other people did." However, during the trial, Pierchalski never accused his co-defendants of forcing the complainant to commit acts against her will, though he did testify that they had intercourse with her. While this statement would conflict with the defense of mistaken identity, it would not necessarily conflict with the defense of consent. Absent sufficient evidence that the co-defendants intended to rely on the defense of mistaken identity, we fail to see how they were prejudiced by Pierchalski's testimony.

The co-defendants rely on *Craig* to support their contention that the

trial court had an obligation to inquire whether any potential for antagonistic defenses existed based on Hastings' petition for severance. Their reliance on *Craig* is misplaced since the court also noted that where, as here, there is no showing of antagonistic defenses, a reviewing court will not reverse the denial of a motion for severance. Conjectural or speculative conflicts of interests are insufficient.

As to Hastings' contention that he was denied effective assistance of counsel, that argument is equally without merit. Though Pierchalski and he were represented by the same attorney, absent a true showing of conflict of interest as a result of antagonistic defenses, we fail to see how he was denied effective assistance of counsel. *People v. Craig*; see also *People v. Davis* (1976), 43 Ill. App. 3d 603, 357 N.E.2d 96.

■■ The co-defendants next argue that they were denied a fair trial due to various errors and acts of misconduct committed by the prosecution which prejudiced their case. They first cite four instances where the prosecution, during cross-examination of Pierchalski, discovered inconsistencies in the testimony and asked him whether he or the other witnesses were lying. They cite *People v. Hicks* (1971), 133 Ill. App. 2d 424, 273 N.E.2d 450, to support their contention. While *Hicks* is correctly cited for the proposition that it is improper to attempt to force a defendant to judge the veracity of a witness against him since that represents an invasion of the province of the jury, we do not think the error was prejudicial to the co-defendants. Unlike the present case, *Hicks* involved an attempt, during cross-examination, to link the defendant with previous, unrelated wrongdoing. No such attempt was made by the prosecution in the present case and therefore, *Hicks* is not analogous. While we do not condone this type of questioning, in view of all the evidence presented in the case, we do not believe that a new trial is warranted. See *People v. Hill* (1978), 58 Ill. App. 3d 822, 374 N.E.2d 1020.

The co-defendants next cite as prejudicial the prosecution's questioning of defense witness Timothy Milligan. During his cross-examination the prosecution asked him if he ever used the name "Timothy Mulligan" or ever rode motorcycles with the defendants. They argue these remarks were prejudicial in that they insinuated that Milligan was a "bad person" because he used an alias and was therefore not to be believed. The reference to motorcycles was prejudicial, they argue, because it implied that they belonged to a motorcycle gang. They also cite as prejudicial the prosecution's cross-examination of defense witness Gerald Rachoy as to what was said by the complainant at the preliminary hearing. They argue that during the questioning of Rachoy, the prosecution implied that Rachoy was lying about what the complainant said and further, that he had been implicated by one of the defendants. ■■ We have reviewed the record and do not find sufficient prejudice to

warrant a new trial. A reviewing court will reverse only if it determines that the verdict would have been different had the objectionable remarks not been made. (*People v. Davis* (1970), 46 Ill. 2d 554, 264 N.E.2d 140.) We do not believe that a different verdict would have resulted if these remarks had not been made. The evidence of guilt was great and the resulting prejudice, if any, was insignificant.

Similarly without merit is the co-defendants' contention that the prosecution insinuated that defense counsel "coached" the defense witnesses, thereby impugning the integrity of defense counsel in the eyes of the jurors. Representative of the several occasions where the alleged improper insinuations occurred is the following cross-examination of Gerald Rachoy and Benny Johnson:

"Q. Who told you to say 'kissy face'?

A. Nobody. That's a common phrase.

Q. It is?

A. Yes, sir.

Q. All your good friends always talk about kissy face?

MR. FOXGROVER: Objection as to what a group of friends talk about.

THE COURT: Sustained."

During cross-examination of Benny Johnson, the last question asked by the prosecution was as follows:

"Q. Since you had some trouble with the word 'volition' do you know what the word 'chastity' means?

A. Yes.

Q. Do you know what the word 'perjury' means?

MR. FOXGROVER: Objection.

A. Yes.

THE COURT: Sustained."

We agree that the prosecution may not impugn the integrity of defense counsel by accusing them of suborning perjury or manufacturing testimony. (*People v. Weathers* (1975), 62 Ill. 2d 114, 338 N.E.2d 880; *People v. Stock* (1974), 56 Ill. 2d 461, 309 N.E.2d 19; *People v. Martin* (1975), 29 Ill. App. 3d 825, 331 N.E.2d 311.) However, improper remarks do not constitute reversible error unless they result in substantial prejudice. (*People v. Nilsson* (1970), 44 Ill. 2d 244, 255 N.E.2d 432, *cert. denied* (1970), 398 U.S. 954, 26 L. Ed. 2d 296, 90 S. Ct. 1881.) Again, we fail to see how any prejudice resulted from this line of questioning. It is not clear that the prosecution was implying that the witnesses were "coached" by defense counsel. Further, even if the prosecution were attempting to impugn the integrity of defense counsel, we do not believe that the outcome of the trial was affected. Consequently, in the absence of

substantial prejudice resulting from these remarks, there is insufficient grounds for a reversal.

■■ The co-defendants next argue that they were denied a fair trial by the prosecution's comment on their failure to testify. During closing arguments, the following occurred:

> "MR. ARTHUR: Look at those pictures. You tell me—You think about how she testified here. You tell me that that is the kind of person [complainant] is. *They* have to say something.
>
> MR. FOXGROVER: Objection, they don't have to say anything, your Honor.
>
> THE COURT: Overruled. Go ahead." (Emphasis added.)

Co-defendants argue that "They have to say something" was a reference to their failure to testify. Citing *People v. Stock* (1974), 56 Ill. 2d 461, 309 N.E.2d 19 and *People v. Chellew* (1968), 104 Ill. App. 2d 100, 243 N.E.2d 49, they conclude that this was reversible error. We disagree. From our review of the record, it is clear that the "They" in the quote referred to the *photographs* of the complainant, not the co-defendants. The photographs of the complainant's bruised and swollen face were introduced to indicate the brutality with which she was attacked. Consequently, the co-defendants' argument is without merit.

Hastings next argues that his sentence of 20 to 60 years for deviate sexual assault was excessive. After reviewing all of the facts in this case, we are inclined to agree. In *People v. Franklin* (1976), 42 Ill. App. 3d 408, 424, 355 N.E.2d 634, 647, we stated:

> "Some factors to be considered in reviewing sentences imposed by the trial court are (1) the seriousness of the crime at bar, (2) any prior convictions, (3) the defendant's natural inclination or aversion to commit crime, and (4) the stimuli which motivated his conduct. *E.g., People v. Morgan*, 59 Ill. 2d 276, 282, 319 N.E.2d 764, 768; *People v. Dukett*, 56 Ill. 2d 432, 452, 308 N.E.2d 590, 601."

■■ We recognize that Hastings and his companions committed repeated violent criminal acts. However, in the interests of rehabilitation, we feel his sentence must be reduced. His youth, coupled with his record of only one misdemeanor conviction, and his successful completion of trade school, convinces us that the reduction is appropriate.

■■ Oglesby next argues that his sentence of 9 to 27 years and his fine of $2500 was excessive and an abuse of discretion. Considering the fact that Oglesby was on probation for burglary at the time of the attack on the complainant, we feel the sentence of 9 to 27 years was not excessive. However, we feel the $2500 fine must be eliminated. The trial judge imposed the fine because he believed that Oglesby had given the complainant mescaline. While it was established that Oglesby gave her a

pill, which she put in her purse, it was never established that the pill contained mescaline. Under these facts we believe that the fine was improper and should be vacated.

■■ Finally, Nitz argues that his sentence of 6 to 18 years was also excessive and an abuse of discretion. After reviewing the facts in this case and Nitz' two previous convictions for battery, we conclude that the sentence imposed was not excessive and was well within the guidelines enumerated in *Franklin.*

Accordingly, Hastings' sentence for deviate sexual assault is hereby reduced to a term of 9 to 27 years and Oglesby's fine of $2500 is vacated. The judgments of the circuit court of Cook County are affirmed as modified in part.

Judgment affirmed as modified.

GOLDBERG, P. J., and CAMPBELL, J., concur.