**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 21 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

MONTY YAZZIE RAMONE, a/k/a
Monte Ramone,

      Defendant-Appellant.

No. 99-2001

---

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. CR-97-728 LH)**

---

Benjamin A. Gonzales, Assistant Federal Public Defender, State of New Mexico, Albuquerque, New Mexico, for Defendant-Appellant.

Robert D. Kimball, Assistant United States Attorney (John J. Kelly, United States Attorney, with him on the brief), State of New Mexico, Albuquerque, New Mexico, for Plaintiff-Appellee.

---

Before **EBEL, PORFILIO** and **ANDERSON**, Circuit Judges.

---

**EBEL**, Circuit Judge.

---

    Appellant Monty Yazzie Ramone ("Ramone") was convicted of one count

of assault resulting in serious bodily injury in violation of 18 U.S.C. § 113(a)(6),

one count of assault with a dangerous weapon in violation of 18 U.S.C. §

113(a)(3), and three counts of aggravated sexual abuse by force or threat in

violation of 18 U.S.C. § 2241(a). The court sentenced him to 293 months for the

aggravated sexual abuse convictions and seventy-eight months for the assault

convictions to be run concurrently, followed by three years of supervised release

for the assault counts to run concurrently with five years of supervised release for

the aggravated sexual abuse counts. On appeal, Ramone argues that the district

court abused its discretion and violated his constitutional rights when it limited,

pursuant to Federal Rule of Evidence 412, the evidence he could present and

inquire about with respect to his prior sexual relationship with the victim.[1] We

exercise jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## BACKGROUND

The victim, Ramone's former girlfriend, testified at trial that on the night

of August 25, 1997, Monty Ramone arrived at their home drunk and high on

drugs. She stated that he urinated on her, punched her in the face and eyes,

opened a wound on her head by hitting her with a dumbbell, and held a knife to

her neck, saying that he would kill her if she told the cops. It was after this

---

[1] Ramone also appealed his sentence on the two assault convictions. Following briefing to this court, the district court entered an Order Correcting Clerical Error in Judgment. The parties agreed during oral argument that this order by the district court rendered Ramone's appeal of his sentence on the assault convictions moot. We, therefore, do not need to address that issue.

beating, according to the victim, that Ramone sexually assaulted her. Ramone penetrated the victim with his penis, a shampoo bottle, and a flashlight, which he inserted both vaginally and anally. At the time of the assault and rape, the victim was approximately six or seven months pregnant with Ramone's child.

When the police arrived after receiving an anonymous phone call, they apprehended Ramone. The police reported that as Ramone was being arrested and taken to jail, he stated "I did it because she was sleeping with another man." The victim was taken to the hospital, where she was treated for injuries that included a deep scalp wound along the hairline that required sutures, a cut on her leg, swollen lips that inhibited her eating and affected her speech, a swollen left eye, swollen hands, and a bruised hip. While being treated at the hospital, the victim began to have premature contractions, but they were subsequently controlled with intravenous saline solutions. The police visited the victim at the hospital to take her statement; however, because her lips were swollen she was unable to communicate. The victim testified that when she could finally speak a day or two later, she talked to the police about the incident. It was during this discussion that she reported the rape to the police.

Ramone admitted he had beaten the victim, but contended that the victim had consented to the sexual acts. He testified that after the beating he was so filled with sorrow and guilt about what he had done that he tried to commit

- 3 -

suicide. According to Ramone, they then reconciled and sealed their reconciliation by engaging in consensual sexual activity that the victim initiated. DNA from both Ramone and the victim was found on the flashlight. Ramone argued at trial that because his DNA was also on the flashlight, that showed that the victim voluntarily pushed the flashlight inside his anus.

The trial of this action was set for June 8, and June 15-17, 1998. On May 22, 1998, Ramone made a timely Motion to Introduce Evidence Under Federal Rule of Evidence 412, which governs the admissibility of evidence concerning an alleged victim's past sexual behavior.[2] The motion listed two witnesses, Ramone's sister ("Ms. Ramone") and a Mr. Johnson, each of whom would testify that Ramone and the victim had, in each witness's presence, discussed using objects for sexual activity. A hearing on Ramone's motion was scheduled for June 11, 1998.

On June 10, 1998, Ramone sought to supplement his first motion ("the Supplement"). In the Supplement, Ramone asked the court to permit him to introduce evidence about his entire sexual relationship with the victim, beginning

---

[2] Under Federal Rule of Evidence 412, a party intending to offer evidence of specific instances of sexual behavior by the victim must file a written motion at least fourteen days before trial specifically describing the evidence it intends to introduce and stating the purpose for which it is offered. See Fed. R. Evid. 412(c)(1)(A). The fourteen-day notice can be modified by the court for good cause shown. See id. Ramone's trial was set for June 8, 1998, thus the fourteenth day before trial was May 25, 1998.

in May 1996 and including the months of January to April and June through August 1997. At the June 11th hearing, the court asked the defense to show good cause for granting the untimely Supplement. Ramone's counsel responded that the defendant's own testimony about his relationship with the victim would be very narrow. Moreover, Ramone's counsel argued that if Ramone was precluded from testifying about his sexual relationship with the victim, he would be deprived of his constitutional right to defend himself and to a fair trial. Counsel for the government argued that the Supplement was not timely under Rule 412's fourteen-day notice requirement, and that the government therefore did not have fair notice of the introduction of the evidence.

The trial court excluded the evidence proffered in the Supplement because it was "clearly untimely and did not comport with the reasonable requirements of Rule 412(c)(1)(A)." In addition, it found that Ramone had failed to demonstrate any good cause to justify a departure from the rule. The court, however, stated during the hearing that it would allow Ramone to testify as to the general features of the relationship between Ramone and the victim, including that they lived together, had sexual relations, and were having a child together.

As to the evidence proffered in the original motion, the trial court found the evidence offered by Ramone's sister inadmissible. During the hearing, Ms. Ramone testified that Ramone touched an unidentified object and told her that he

and the victim used the object for sex. Ms. Ramone further testified that the victim acknowledged that the object had been used during sex. The trial court found that this testimony was not relevant to the issue of consent. The court further explained, however, that even if the evidence was relevant, it was excluded under Fed. R. Evid. 403, because any probative value was outweighed by the potential for prejudice and confusion.

With respect to the conversation with the victim described by Mr. Johnson, the court reserved its ruling on the admissibility of that evidence until trial. Mr. Johnson testified at the hearing that while he was visiting Ramone and the victim, Ramone went to the refrigerator and pulled out a cucumber and asked the victim if she wanted to have sex with it. The victim replied, "Later." The trial court determined that the alleged responses by the victim in this conversation – if true – indicated that the victim intended to consent to a sexual act involving a cucumber, and thus the evidence could be admissible pursuant to Rule 412(b)(1)(B). The court, however, reserved its ruling on the admissibility of that evidence until after the defense had introduced some evidence that would support a conclusion that the proffered evidence was relevant, or until there was an indication that there was some basis for a defense of consent beyond the defendant's mere assertion of that fact.

At trial, while defense counsel was cross-examining the victim on the issue of consent, she unexpectedly volunteered the following:

> And I told her that he has been asking me who I had sex with and how big their penises [sic] and he said that if I would enjoy the objects that he got, like the cucumber. He asked me if I wanted to have sex with this, if their penises are big like this. Then he also used an object like a bingo marker, and he asked me if I enjoyed it.

Defense counsel did not revisit the Rule 412 issue while the victim was on the stand. Instead, after the government rested, the defense stated that it wished to buttress its claims of consent, by introducing evidence of the use of inanimate objects. The defense argued that because the victim had herself brought out the use of inanimate objects, the reasons for the protections in Rule 412 had been obviated. The court maintained its position that a general discussion of the victim's sexual relationship with the defendant was still barred. The court stated, however, that the defense could "present significant evidence with respect to the objects mentioned by [the victim] in her testimony." The court also pointed out that defense counsel had failed to cross-examine the victim about the objects she mentioned during her testimony. Defense counsel responded that he thought he was precluded from doing so by the 412 ruling, but the judge countered that he "could have approached the bench, and it was remarkable that no interest was generated by her testimony about those other items."

When Ramone took the stand, he testified as to the fact that he lived with the victim and had been in love with her. He also testified that he had beaten the victim on a prior occasion at which time she had moved out. He testified, however, that a few months later the two had reconciled by making love and then moved back in together. During Ramone's testimony about the night of August 25, 1997, he stated that the victim consented to the use of the flashlight. He also testified that on a prior occasion he had inserted a bingo marker into the victim's vagina and anus. He made no other mention of the use of objects during sex. During closing argument, defense counsel referred to Ramone and the victim's consensual use of inanimate objects during sexual activity over the course of their relationship.[3]

After deliberating for a day-and-a-half, the jury found Ramone guilty on all counts. Ramone appeals, alleging that the district court violated his constitutional rights and abused its discretion in limiting his ability to present evidence and to cross-examine witnesses about specific instances of sexual behavior between himself and the victim.

_____

[3] The defense never called Mr. Johnson to the stand during trial to testify about the cucumber.

**DISCUSSION**

We review for abuse of discretion the question of whether an evidentiary restriction as a discovery sanction is warranted under the rules governing criminal proceedings. See United States v. Nichols, 169 F.3d 1255, 1267 (10th Cir.), cert. denied, 120 S.Ct. 336 (1999); see also United States v. Rouse, 111 F.3d 561, 569 (8th Cir. 1997) (reviewing for abuse of discretion a district court's decision to exclude evidence of a victim's sexual activity under Fed. R. Evid. 412 for failure to file a written motion fourteen days prior to trial). We review de novo the issue of whether a district court's discovery violation sanction deprived the defendant of his rights to present a defense and to a fair trial. See Nichols, 169 F.3d at 1267.

A district court's determination regarding the admissibility of evidence is reviewed for an abuse of discretion. See United States v. Davis, 40 F.3d 1069, 1073 (10th Cir. 1994); see also United States v. Powers, 59 F.3d 1460, 1470 (4th Cir. 1995) (stating that a trial court's exclusion of evidence proffered by a criminal defendant about a rape victim's sexual history under Federal Rule of Evidence 412 is reviewed for abuse of discretion). We review de novo whether a district court's restriction of a defendant's cross-examination violated his right to confrontation. See United States v. Byrne, 171 F.3d 1231, 1234 (10th Cir. 1999).

**I. Exclusion of Proffered Evidence in Rule 412 Supplemental Motion and Limitation on Cross-Examination of Victim on that Evidence**

Federal Rule of Evidence 412(c) specifies the procedure that must be followed when a party intends to offer evidence of specific instances of sexual behavior between the alleged victim and the accused to prove consent. The Rule states as follows:

> **(c) Procedure to determine admissibility. –**
>> (1) A party intending to offer evidence under subdivision (b) must–
>>> (A) file a written motion at least 14 days before trial specifically describing the evidence and stating the purpose for which it is offered unless the court, for good cause requires a different time for filing or permits filing during trial; and
>>> (B) serve the motion on all parties and notify the alleged victim or, when appropriate, the alleged victim's guardian or representative.

Fed. R. Evid. 412(c)(1). Trial was set for June 8, 1998. Thus, to be timely under Rule 412, Ramone would have had to file a motion before May 25, 1998. Although his initial motion offering the testimony of Mr. Johnson and Ms. Ramone was timely filed on May 22, 1998, the Supplement, proffering evidence about his entire sexual relationship with the victim, was not filed until June 10, 1998. The district court correctly found that the proffered testimony in the supplement was directly covered by the rule. Because Ramone failed to submit the supplemental motion fourteen days prior to trial, and finding no good cause to

excuse the delay, the district court excluded the proffered evidence in the supplemental motion and prohibited all cross-examination of the victim on that evidence.

Federal Rule of Evidence 412 provides that "[e]vidence offered to prove that any alleged victim engaged in other sexual behavior" is not admissible. Fed. R. Evid. 412(a)(1). However, "evidence of specific instances of sexual behavior by the alleged victim with respect to the person accused of the sexual misconduct" may come in at a criminal trial to prove consent, if otherwise admissible under the rules of evidence. Fed. R. Evid. 412(b)(1)(B). Thus, the proffered evidence of Ramone's sexual relationship with the victim contained in the Supplement, which included evidence of specific sexual acts with inanimate objects, squarely fits within Rule 412. Ramone therefore was required to submit a written motion to the court fourteen days prior to trial. See Fed. R. Evid. 412(c)(1)(A). Ramone failed to meet this requirement. At least one other circuit has held that it is not an abuse of discretion to exclude evidence under Rule 412 when the defendant fails to file a written motion at least fourteen days prior to trial. See Rouse, 111 F.3d at 569; United States v. Eagle Thunder, 893 F.2d 950, 954 (8th Cir. 1990) (stating that failure to file a written notice of intent to offer evidence under Rule 412 was sufficient, on its own, to allow district court to exclude proffered evidence). We agree.

- 11 -

Ramone argues, however, that his Sixth Amendment right to testify and to confront and cross-examine witnesses has been violated in this case by the exclusion of the proffered testimony.  The Supreme Court has held that the exclusion of evidence based on the failure to comply with a notice provision in a rape shield statute is not necessarily a Sixth Amendment violation.  See Michigan v. Lucas, 500 U.S. 145, 151-53, 111 S.Ct. 1743, 114 L.Ed.2d 205 (1991).  The Court explained that "'[t]he right to present relevant testimony is not without limitation.  The right may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.'"  Id. at 149 (quoting Rock v. Arkansas, 483 U.S. 44, 55, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987)) (further internal quotations omitted).  However, the Court was quick to point out that any restriction on the right of the defendant to testify and present witnesses could not be "arbitrary or disproportionate to the purposes [it was] designed to serve." Lucas, 500 U.S. at 151 (internal quotations omitted).   "In applying its evidentiary rules [the rulemaking authority] must evaluate whether the interests served by a rule justify the limitation imposed on the defendant's constitutional right to testify."  Rock, 483 U.S. at 56.

We hold that the exclusion of Ramone's proffered evidence contained in the Supplement because of the violation of the fourteen-day notice rule under Federal Rule of Evidence 412(c)(1)(A) did not violate Ramone's Sixth

Amendment rights. First, the notice provision contained in Rule 412 is not arbitrary. The rule supports important interests implicated in sexual assault cases. The advisory committee notes that follow Rule 412 indicate that the rule is intended to safeguard the victim against invasion of privacy, potential embarrassment, and stereotyping. See Fed. R. Evid. 412 advisory committee's note. "By affording victims protection in most instances, the rule also encourages victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders." Id. The notice requirement contained in the rule also works to protect both the victim and the prosecution against surprise and prejudice due to late disclosure of evidence. See Lucas, 500 U.S. at 149-50. Further militating against a finding of arbitrariness, is the fact that the notice provision of Rule 412 allows a court to dispense with the fourteen-day limit for "good cause." See Fed. R. Evid. 412(c)(1)(A). The advisory committee notes indicate that good cause for late filing may be shown through newly discovered evidence that could not have been obtained at an earlier time through due diligence. See Fed. R. Evid. 412 advisory committee's notes.

The above interests were all implicated when Ramone attempted to introduce into evidence the entire sexual relationship with the victim in the Supplement filed just a day before trial. As the government argued at the hearing on the motion, the introduction of this evidence on such short notice would have

been highly prejudicial. Instead of requiring the government and the victim to focus only on the two specific acts mentioned in the initial May 22, 1998 motion, the Supplemental motion would have required the government and the victim to delve into the entire sexual relationship with Ramone, introducing new issues into the trial and severely invading the victim's privacy and potentially causing further embarrassment. Moreover, none of this evidence was newly discovered. Ramone has always known about his relationship with the victim and easily could have included this proposed evidence in his initial timely motion of May 22, 1998. Thus, the notice requirement was not arbitrary.

Nor was the exclusion of the evidence under Rule 412 disproportionate. Ramone was not completely prevented from testifying about his prior consensual sexual relationship with the victim. From the outset, the district court allowed Ramone to testify that he had a relationship with the victim, that she was pregnant with his child, and that they had lived together. Moreover, once the victim opened the door during her testimony about the use of inanimate objects during sex with the defendant, the district court instructed Ramone's counsel that he would give him "leeway to discuss or decline to discuss all those matters that were mentioned by the victim . . . in her testimony." Ramone was therefore allowed to testify about the use of a bingo marker during sex with the victim and defense counsel was permitted to argue during closing argument the prior

consensual use of inanimate objects during sex.[4]  Thus, Ramone was able to

introduce evidence with respect to his defense of consent and was not entirely

precluded from offering his theory of the case.

The only evidence Ramone points to that was excluded was evidence

concerning the frequency of sexual activity between himself and the victim and

evidence concerning the use of certain specific inanimate objects.  Ramone has

failed to convince us that evidence about the frequency of his sexual activity with

the victim was relevant to consent on the night in question after Ramone had

violently beaten the victim.  Evidence about their use of inanimate objects during

sex did come out at trial through both the victim's own testimony and Ramone's

testimony.  Moreover, Ramone's counsel was able to argue the fact that the

couple had previously engaged in consensual use of inanimate objects during sex

to the jury during closing argument.  We do not believe that the exclusion of what

was essentially cumulative evidence of the use of inanimate objects denied the

defendant his right to a fair trial.

---

[4] We also note that the limit on Ramone's testimony was significantly less severe than in Taylor v. Illinois, 484 U.S. 400, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988).  In Taylor, the Supreme Court found no Sixth Amendment violation despite the fact that a proposed defense witness was completely prevented from testifying as a sanction for violating a disclosure rule.  See Taylor, 484 U.S. at 416-18.

Ramone further contends that his right to cross-examination was violated when he was unable to cross-examine the victim about the evidence in the Supplement. This argument has no merit. Ramone was permitted to cross examine the victim thoroughly about the night in question and attempted to convince the jury that she consented to sex on that night. Furthermore, the victim volunteered during cross-examination that she and the defendant had used inanimate objects during sex. At that point, Ramone's counsel had the opportunity to approach the bench and request that he be allowed to cross-examine the witness further about the use of inanimate objects. Defense counsel's own failure to seize this opportunity does not show that the district court unfairly limited Ramone's right to confront his accuser. Thus, we conclude that the exclusion of the evidence contained in the Supplement because of Ramone's failure to comply with the notice requirements of Rule 412 was not disproportionate. We therefore hold that the district court did not violate Ramone's Sixth Amendment rights nor abuse its discretion when it excluded the proffered testimony contained in the Supplement pursuant to Federal Rule of Evidence 412.[5]

---

[5] Ramone contends that the Ninth Circuit case United States v. Peters, 937 F.2d 1422 (9th Cir. 1991), held that exclusion of evidence is permissible as a discovery sanction only when the case involves some defense misconduct. This was not the holding of Peters. In Peters, the district court excluded the

(continued...)

## II. Exclusion of Ms. Ramone's Testimony and Cross-Examination of Victim Thereon

Ramone contends that the district court abused its discretion and denied him his constitutional right to present a defense under the Sixth Amendment when it excluded the testimony of his sister Ms. Ramone and any cross-examination of the victim concerning what would have been the substance of Ms. Ramone's testimony. Ms. Ramone would have testified about a conversation that took place between herself, Ramone, and the victim, in which the victim allegedly acknowledged using an unidentified object during sex. Ramone argues this testimony was essential to his defense of consent. The district court excluded the evidence, concluding that it was not relevant to the issue of consent because the victim's response that the object had been used did not indicate consent to its use. The court went on to find, however, that even if relevant, the evidence should be excluded under Federal Rule of Evidence 403, as any probative value was substantially outweighed by unfair prejudice, confusion of the issues, and the potential for misleading the jury.

---

[5](...continued)
defendant's expert witness for violation of a local disclosure rule. Id. at 1424. The Ninth Circuit reversed, finding that the defendant had not violated any clear discovery rule and thus exclusion of the testimony was inappropriate. Id. at 1426. Unlike the defendant in Peters, Ramone violated a clear notice requirement contained in Federal Rule of Evidence 412.

"The right to present a defense is a 'fundamental element of due process of law.'" United States v. Bautista, 145 F.3d 1140, 1151 (10th Cir. 1998) (quoting Richmond v. Embry, 122 F.3d 866, 871 (10th Cir. 1997), cert. denied, 522 U.S. 1122 (1998)). However, in presenting evidence a defendant must comply with the rules of evidence and procedure "to assure both fairness and reliability in the ascertainment of guilt and innocence." Embry, 122 F.3d at 872 (internal quotations and citations omitted). "This includes standards of relevance and materiality." Bautista, 145 F.3d at 1152. In addition, "'trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about . . . harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" United States v. Byrne, 171 F.3d 1231, 1234 (10th Cir. 1999) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)). We agree with the district court that Ms. Ramone's testimony had limited relevance, and what limited probative value it did have was outweighed by the potential for prejudice and confusion of the issues. See Fed. R. Evid. 403.

As the district court noted in its order excluding the testimony, there was no indication in Ms. Ramone's testimony that the victim had consented to the use of the unidentified object. Thus, it is difficult to discern what relevance the

testimony could have to Ramone's consent defense. We can not agree with the defendant that evidence of prior consensual use of inanimate objects during sex is probative of whether sex after a brutal beating was consensual.[6]

Finally, we agree with the district court that any limited probative value the testimony might have had was outweighed by unfair prejudice, confusion of the issues and the potential for misleading the jury and thus properly excluded under Federal Rule of Evidence 403. The testimony likely would have focused the jury's attention on the victim's prior unusual sexual practices rather than on the crucial issue of whether she consented to sexual activity on the night in question. Thus, because the district court properly applied the rules of evidence, we conclude that the district court did not abuse its discretion when it excluded Ms.

---

[6] Although we were unable to find any federal cases discussing the relevance of prior consensual sexual activity between the victim and the defendant in a brutal rape case, there are several state cases which have found such evidence irrelevant under rape shield statutes similar to Federal Rule of Evidence 412. See State v. Lykken, 484 N.W.2d 869, 874-75 (S.D. 1992) (allowing evidence of prior sexual relationship with victim but excluding pictures and explicit testimony of prior sexual activities because they presented substantial danger of unfair prejudice, confusion of issues, or needless presentation of cumulative evidence); People v. Zysk, 386 N.W.2d 213, 217 (Mich. Ct. App. 1986) (finding that the prior sexual episodes the defendant sought to have admitted "were distinct and unrelated to the brutal acts involved in the charged offense" and "highly prejudicial"); People v. Hastings, 390 N.E.2d 1273, 1277 (Ill. App. Ct. 1979) (excluding evidence of past sexual activity because a victim's consent to sex with the defendant in the past does not mean she "consented to the acts committed on the night in question").

Ramone's testimony and any cross-examination thereon, and did not prevent Ramone from presenting a defense.

## CONCLUSION

For the reasons set forth above, the judgment of the district court is AFFIRMED.