THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JOHN S. COLLINS, Defendant-Appellant.

First District (3rd Division)    No. 78-378

Opinion filed June 25, 1980.

Patrick T. Driscoll, Jr., of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Pamela L. Gray, and Nancy Lynn Martin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE SIMON delivered the opinion of the court:

The defendant was convicted of armed robbery and theft of 5000 pounds of nickel and 2000 pounds of copper from a corporate manufacturer. He contends that he was denied a speedy trial, that the armed robbery and theft charges were improperly joined with a bail-jumping charge and that at his jury trial he was stripped of the presumption of innocence. We affirm.

The nickel and copper were taken during the corporation's overnight shift on November 9, 1969. Defendant was indicted for the offense on April 8, 1970. In 1973 a detainer was placed on Collins while he was in custody on unrelated charges in Texas. It was removed 4 days later, but Collins then wrote the Cook County State's Attorney from a Federal correctional facility, asking that he be returned to Cook County for a speedy trial of the Illinois indictment. He was not returned, and trial did not begin until May 2, 1977.

■■ Collins urges a complete reversal because the State failed to comply with the speedy trial provisions of the Agreement on Detainers. (Ill. Rev. Stat. 1977, ch. 38, par. 1003—8—9.) However, Collins did not serve a copy of his request on the warden of the facility at which he was imprisoned, as required by article III(b) of the Agreement. The result of this failure was that Illinois never received a certificate from the warden who had custody of Collins explaining the length and circumstances of his confinement. The certificate was indispensable, and without it, Illinois was not required to bring the defendant back for a speedy trial. *People v. Uplinger* (1976), 45 Ill. App. 3d 558, 562, 359 N.E.2d 1052, 1056, *aff'd* (1977), 69 Ill. 2d 181, 370 N.E.2d 1054; *People v. Daily* (1977), 46 Ill. App. 3d 195, 203, 360 N.E.2d 1131, 1138.

Collins also suggests that it was error to join the armed robbery and theft indictment for trial with a bail-jumping charge, filed later, especially after the State had already elected to proceed only on the more serious charges. But Collins was acquitted on the bail-jumping charges by a directed verdict at trial. He suffered no harm from any erroneous joinder. We think that the jury may have been influenced more in favor of Collins instead of against him by the bail-jumping charge in reaching its verdict on armed robbery or theft. The inference that the defendant was more blameworthy simply because of the bail-jumping charge would have dissipated when that charge was resolved in Collins' favor, and by prevailing on that charge, Collins might have added to any doubts the jury had of his guilt on the armed robbery and theft charges.

■■ The final point on appeal concerns the propriety of forbidding the defendant, who was conducting his own defense, from handling in court a shotgun that had been introduced as an exhibit. Our discussion of this issue must be prefaced by some general remarks about the presumption of innocence. Every defendant brought to court to stand trial in a criminal matter is presumed innocent. "Any person indicted stands before the bar of justice clothed with a presumption of innocence and, as such, is tenderly regarded by the law. Every safeguard is thrown about him." (*People v. Riley* (1941), 376 Ill. 364, 368, 33 N.E.2d 872, 875.) The presumption can be traced back to the early English common law; it is a basic component of due process. (*Estelle v. Williams* (1976), 425 U.S. 501,

503, 48 L. Ed. 2d 126, 130, 96 S. Ct. 1691, 1692.) It raises a higher standard of proof than prevails in civil cases, but it also means that an accused has the right to stand trial "with the appearance, dignity and self-respect of a free and innocent man." (*In re Staley* (1977), 67 Ill. 2d 33, 37, 364 N.E.2d 72, 73.) Where an accused chooses to exercise his sixth amendment right to personally make his own defense through cross-examination of witnesses and the orderly presentation of evidence (*Faretta v. California* (1975), 422 U.S. 806, 819, 45 L. Ed. 2d 562, 572, 95 S. Ct. 2525, 2533), the trial court must make certain that the defendant's sometimes confused attempts to make his defense properly do not strip him of the presumption of innocence. The presumption remains with an accused until he is proved guilty under the established and regular methods of procedure. *People v. Lund* (1943), 382 Ill. 213, 217, 46 N.E.2d 929, 931.

With these principles in mind, we note that Collins chose to conduct his defense *pro se*, and was provided an assistant public defender to act as his legal adviser. In his opening statement, Collins told the jury that he had been convicted in the past for auto theft, but that he did not believe in violence. He described the State's proof of armed robbery as "a pack of lies," and promised to take the stand himself to tell his side of the story.

The night watchman at the factory from which the nickel and copper were taken was the State's first witness. He testified that on the night of the theft, he permitted the company's midnight shift to enter, and then was held up by two men with a shotgun. He identified Collins as one of the men. The shotgun was marked as an exhibit, displayed to the witness by the prosecutor and identified. When Collins' turn for cross-examination came, he asked the prosecutor if he could "see the shotgun." The weapon was lying on the prosecutor's table. The prosecutor objected, suggesting that it would not be "advisable" for Collins to handle the weapon. The trial court refused the defendant's request and ordered an Assistant State's Attorney to handle the exhibit in the defendant's place during cross-examination. Collins objected to this procedure, saying that he wanted to handle the exhibit in his examination of the witness just as his counterpart, the prosecutor, had in his.

At a sidebar, the trial judge offered to instruct the jury that he was not refusing to Collins individually the right to examine the exhibit within the jury's presence, but that as a matter of policy he never allowed defendants in criminal cases to have a weapon in their possession in the courtroom. Collins refused the offer, saying he preferred to explain to the jury in closing argument that the State was trying to make him look like a "gangster or villain," too dangerous to be allowed to hold an unloaded weapon in court. Later, the trial judge instructed the State to keep a fire ax, allegedly used to break into the area where the nickel and copper were stored, out of the courtroom. In closing argument, Collins told the

jury that refusing to allow him to handle the shotgun in its presence was one more example of the State's attempt to paint him as an outlaw and bolster its weak case.

■■ The refusal to allow Collins to handle the exhibit was error. There was no violation of his right to confrontation, because he was given the opportunity before trial to examine the weapon as a normal part of discovery. However, the treatment afforded Collins stripped him of his presumption of innocence by making it appear to the jury that the defendant was a dangerous man. (See *State v. Wendel* (Mo. App. 1975), 532 S.W.2d 838.) If there be any doubt about the error, consider the treatment Collins received compared to that his counsel, had he chosen to have one, would have received. It would be the duty and right of trial counsel to examine a shotgun introduced as a trial exhibit. (*United States v. Dressler* (7th Cir. 1940), 112 F.2d 972, 975.) Just as the prosecutor was allowed to handle the shotgun, we assume that Collins' counsel would have been allowed to handle the exhibit. So we must conclude that Collins was forbidden to handle the exhibit solely because he was the defendant in the case. A special safety measure taken only against a defendant in the jury's presence without any showing of special need to depart from established procedures—what could more offend the defendant's presumption of innocence?

The State argues that the order was proper because Collins was in custody. Pretrial detention is not, however, meant to protect the public from a violent person, but only to insure the defendant's presence at trial. Once the accused enters the courtroom on the day of trial, the purpose of custody is served, and the accused must be allowed to meet his adversary, the State, on an equal footing. This should have meant equal access to all exhibits presented in the trial.

Reasonable safety measures may of course be taken by a trial court in the exercise of the court's duty to ensure orderly proceedings. (*People v. Dorn* (1977), 46 Ill. App. 3d 820, 361 N.E.2d 353; see, *e.g., Illinois v. Allen* (1970), 397 U.S. 337, 25 L. Ed. 2d 353, 90 S. Ct. 1057; *People v. Boose* (1977), 66 Ill. 2d 261, 362 N.E.2d 303.) But the trial court's powers may be invoked only when and to the extent justified by the danger of a significant interference with the order of progress of the trial. (*Bitter v. United States* (1967), 389 U.S. 15, 19 L. Ed. 2d 15, 88 S. Ct. 6.) If order in the trial court is the concern no controls should be placed on the defendant until the need has been demonstrated, and the controls should be the least restrictive available. (*Kennedy v. Cardwell* (6th Cir. 1973), 487 F.2d 101, 110-11.) There was no showing of any danger to order or safety in this case. Collins' defense, though at times spirited, was not disruptive. (Compare *United States v. Seale* (7th Cir. 1972), 461 F.2d 345.) If there was any serious question as to whether the shotgun had

ammunition in it or whether Collins had secreted ammunition on his person, the trial judge could have been satisfied by examinations outside the jury's presence. The shotgun, so long as it was unloaded, was no more dangerous than a chair or any other piece of furniture that could be used as a club, as the defendant pointed out to the trial court. No less restrictive means, such as allowing Collins' legal adviser instead of the prosecutor to handle the shotgun in place of the defendant, were used. Because there was no hearing outside the presence of the jury which showed the need for and propriety of the special treatment the defendant received in this case, the order of the trial court was an abuse of discretion. *Boose*, 66 Ill. 2d 261, 266, 362 N.E.2d 303, 305.

Despite the constitutional error, we can find no reversible prejudice to the defendant. The test of harmless constitutional error is whether the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.) The United States Supreme Court has not provided a formula for measuring error under *Chapman*, but at least three approaches have been noted: (1) Focusing on the error to determine whether it might have contributed to the conviction (*e.g., Fahy v. Connecticut* (1963), 375 U.S. 85, 11 L. Ed. 2d 171, 84 S. Ct. 229); (2) Examining the other evidence in the case to see if overwhelming evidence supports the conviction (*e.g., Milton v. Wainwright* (1972), 407 U.S. 371, 33 L. Ed. 2d 1, 92 S. Ct. 2174); (3) Determining whether the error is merely cumulative or duplicates properly admitted evidence (*e.g., Harrington v. California* (1969), 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726). (*State v. McKenzie* (1980), ____ Mont. ____, ____, 608 P.2d 428, 458.) Under any of these approaches, the error was harmless beyond a reasonable doubt due to the successful actions taken by the defendant after the error was committed.

John Collins adroitly turned the trial court's error to his own benefit. The error demanded some explanation, but we feel that by arguing to the jury that the trial court's order illustrated the weakness of the State's overall case against him, Collins nullified the normally harmful probable impact the error would have on the jurors. (*Harrington*, 395 U.S. 250, 254, 23 L. Ed. 2d 284, 287-88, 89 S. Ct. 1726.) We cannot reasonably say that the error contributed to the conviction when it appears to have been ably defused, and even taken advantage of, by the defendant. Perhaps this explains why Collins declined the trial judge's offer to instruct the jury why he was not permitting Collins to handle the shotgun. Thus, the first approach does not yield prejudice.

Under the second approach, the testimony of the two State's witnesses gave positive identifications of the defendant as the participant in an armed robbery and theft. Even the defendant's version of events left him guilty of at least theft since he admits he drove a truck loaded with

the stolen metal which he had rented for that purpose. The evidence of guilt was overwhelming, and we do not believe that the defendant's loss of the presumption of innocence added to the strength of the State's case. Again, there was no prejudice to the defendant.

Finally, the effect of the error was merely cumulative. The defendant did not solely rely on the presumption of innocence, but took the stand in an effort to explain that he was innocent of armed robbery. An unviolated presumption of innocence would have been to his benefit, but only would have duplicated his own testimony. Similarly, the trial judge's refusal to permit Collins to handle the shotgun presented the defendant as a dangerous man, but this only duplicated the testimony regarding the role Collins played in the theft of the nickel and copper which the jury had already heard. Thus, we find no harm to the defendant under this approach either.

With no prejudice to the defendant there is no reason to reverse the judgment of conviction. A defendant should not profit by a trial error when it does not affect the verdict or cast a reasonable doubt on his guilt. Though we find error below, we find no prejudice, and we therefore affirm John Collins' convictions for armed robbery and theft.

Judgment affirmed.

McGILLICUDDY, P. J., and McNAMARA, J., concur.