THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH PUENTE, Defendant-Appellant.

First District (3rd Division)    No. 79-1767

Opinion filed July 22, 1981.—Rehearing denied August 12, 1981.

Ralph Ruebner and Richard F. Faust, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Gael McCaughey-O'Brien, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE WHITE delivered the opinion of the court:

A jury returned verdicts finding defendant Joseph Puente, Jr., guilty of attempt murder, armed robbery and two counts of aggravated battery. Judgment was entered on the armed robbery and attempt murder verdicts, and defendant was sentenced to concurrent fifteen-year terms for these offenses.

## I

It is first contended that the trial court erred in denying defendant's motion *in limine* to exclude evidence of the delinquency adjudication for burglary of defendant's brother, Jesse Puente, if introduced by the State to impeach him if he testified. Jesse was, in fact, on probation for this offense at the time of the trial. Defendant argues that the ruling of the trial court prevented Jesse from testifying, and that if Jesse had testified he could have corroborated major portions of defendant's testimony, including his alibi that he and Jesse attended a party earlier in the evening and also defendant's denial of the testimony of the victim, Daniel Ortega, that defendant and Jesse met and talked with him shortly before the incident. Defendant's argument is that section 2—9(1) of the Juvenile Court Act (Ill. Rev. Stat. 1979, ch. 37, par. 702—9(1)) prevents the use of a juvenile adjudication to impeach the credibility of a defense witness.

Section 2—9(1) of the Juvenile Court Act provides:

"(1) No adjudication, disposition or evidence given in proceedings under this Act is admissible as evidence against the minor for any purpose * * *. Neither the fact that a minor has been the subject of proceedings under this Act * * * is admissible as evidence against him or his interests in any other court or proceeding * * *"

Our supreme court has held that the protective confidentiality provisions of the Juvenile Court Act do not amount to an absolute prohibition against disclosure of juvenile records. (*People v. Norwood* (1973), 54 Ill. 2d 253, 257, 296 N.E.2d 852.) *Norwood* cited 3 Wigmore, Evidence §980 (3d ed. 1940) with approval. That section, in a later (1970) revision, provides:

"A judgment, finding, or proceeding of delinquency in a *juvenile court* is by modern statutes forbidden to be used 'against the child' in any other court [citation]. It would be a blunder of policy to construe these statutes as forbidding the use of such proceedings to affect the credibility of a juvenile when appearing as witness in another court * * * and the revelations in the juvenile court may

be the best or even the only means of exposing the testimonial untrustworthiness of the witness. Neither the policy nor the wording of the statute (liberally construed) should forbid such use." 3 Wigmore, Evidence §980 (Chadbourne rev. ed. 1970).

Both the United States Supreme Court and the Illinois Supreme Court have permitted the impeachment of witnesses on the basis of juvenile records. In *Davis v. Alaska* (1974), 415 U.S. 308, 39 L. Ed. 2d 347, 94 S. Ct. 1105, the Supreme Court held that in a criminal case the defendant's right to confrontation requires that he be allowed to impeach the credibility of a crucial prosecution witness by cross-examination directed at possible bias deriving from the witness' probationary status as a juvenile delinquent, even if such impeachment would conflict with a State's asserted interest in preserving the confidentiality of juvenile delinquency adjudications. The court reasoned that under these circumstances, the constitutional right to cross-examine effectively an adverse witness is paramount to the State's interest in protecting the confidentiality of a juvenile offender's record. (415 U.S. 308, 319, 39 L. Ed. 2d 347, 355, 94 S. Ct. 1105, 1112.) Similarly, in *People v. Norwood* (1973), 54 Ill. 2d 253, 296 N.E.2d 852, the court held that section 2—8 of the Juvenile Court Act did not bar the disclosure of juvenile records of the State's principal witness insofar as they might be relevant to the defendant's claim that the witness' testimony was attributable to lenient treatment which he had received or had been promised.

Several appellate court decisions have also addressed the issue of the use of juvenile records to impeach a prosecution witness. *People v. Bingham* (1979), 75 Ill. App. 3d 418, 394 N.E.2d 430; *People v. Holsey* (1975), 30 Ill. App. 3d 716, 332 N.E.2d 699.

These cases are distinguishable from the case at bar because they involved the impeachment of prosecution witnesses. In the instant case, Jesse Puente would have been a defense witness. Thus, the issue of the accused's right to confront witnesses does not arise.

Here the question is whether a juvenile adjudication can be used to impeach the general credibility of a defense witness. Other jurisdictions deciding this issue have reached opposing conclusions. In *State v. Wilkins* (1974), 215 Kan. 145, 523 P.2d 728, impeachment of a defense witness was permitted. The court held that the rule permitting use of juvenile records to impeach is a double-edged sword, operating both when a witness is called to testify on behalf of the accused as well as when such a witness is called by the State. Other jurisdictions have reached the opposite conclusion. In *State v. Thomas* (Mo. App. 1976), 536 S.W.2d 529, the court held that the State's inquiries of a defense witness as to whether he had been known to the juvenile authorities and as to whether a finding of delinquency had been entered against him were improper under the Missouri

statute. That court held that the State has no sixth amendment right of confrontation. Courts of some seven jurisdictions have supported the position that records of juvenile court adjudications cannot be used to impeach a defense witness' credibility. (See Annot., 63 A.L.R.3d 1112, 1140 (1975).) However, the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States took the contrary and, we believe, the better view that the question of permitting the use of juvenile records to impeach a witness is addressed to the sound discretion of the trial judge. Proposed Rule of Evidence 609(d) as written by that committee, permits the trial judge to weigh in each case whether the impeaching evidence is needed for a fair trial. It reads as follows:

> "(d) Juvenile Adjudications. Evidence of juvenile adjudications is generally not admissible under this rule. The judge may, however, allow evidence of a juvenile adjudication of a witness other than the accused if conviction of the offense would be admissible to attack the credibility of an adult and the judge is satisfied that admission in evidence is necessary for a fair determination of the issue of guilt or innocence." 51 F.R.D. 391.

This is consistent with the balancing approach adopted by this court in *People v. Holsey* (1975), 30 Ill. App. 3d 716, 720, where we held:

> "[T]he use of juvenile records to impeach a minor witness testifying for the State at the criminal trial of another is neither absolutely forbidden nor absolutely permitted. The scope of cross-examination is within the discretion of the trial court, which should balance the importance of the youthful witness' testimony against the State's policy of preserving the anonymity of a juvenile offender."

Proposed Rule of Evidence 609 has been adopted by our supreme court. In *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, the court held that the provisions of this rule should be followed in future cases. Although *Montgomery* did not apply subsection (d) of Rule 609, the court quoted the full text of that rule, including subsection (d). In subsequent cases, our supreme court has stated that the "reference to Rule 609 [in *Montgomery*] was a shorthand expression of our holding, as well as an expression of our view that other provisions in the rule, not concerned in *Montgomery* should be followed." (*People v. Yost* (1980), 78 Ill. 2d 292, 296, 399 N.E.2d 1283; *People v. Ray* (1973), 54 Ill. 2d 377, 383, 297 N.E.2d 168.) Furthermore, Proposed Rule of Evidence 609(d) is substantially similar to Federal Rule of Evidence 609(d).

While juvenile adjudications before *In re Gault* (1967), 387 U.S. 1, 18 L. Ed. 2d 527, 87 S. Ct. 1428, may have been considered to lack the general probative value of a criminal conviction because of their informality and because of departures from accepted standards for criminal trials, *Gault* eliminates these characteristics insofar as they are objectionable.

Advisory Committee's Note to Proposed Rule of Evidence 609(d), 51 F.R.D. 391, 394.

■■ In our opinion, a trial court has discretion to allow evidence of a juvenile adjudication of a defense witness to impeach such witness' general credibility when the criteria established by Proposed Rule of Evidence 609 are satisfied. In other words, if a juvenile adjudication is for an offense the conviction of which would be admissible to attack the credibility of an adult and the trial court is satisfied that admission of such adjudication in evidence is necessary for a fair determination of the issue of guilt or innocence, then the trial court may admit for impeachment evidence of a juvenile adjudication of a defense witness other than the accused. In determining whether the admission of a juvenile adjudication is necessary, the trial court should balance the importance of the witness' testimony against the policy of preserving the anonymity of a juvenile offender.

At the time of the trial court's ruling on defendant's motion *in limine,* it was clear that Jesse Puente's testimony would be critical. Ortega had testified that he had spoken with defendant and defendant's brother shortly before the incident in question. Defendant argues that Jesse could have testified that they did not meet and converse with the victim shortly before the incident. Thus, Jesse's testimony might have severely weakened the identification testimony of Ortega. Furthermore, defendant argues that Jesse could have testified that he and his brother attended a party on the evening in question. Therefore, Jesse could have corroborated major portions of defendant's trial testimony. Under these circumstances, it was important to test Jesse Puente's reliability as a witness. Therefore, we conclude that the trial court did not err in denying defendant's motion *in limine* to exclude evidence of Jesse Puente's juvenile adjudication for burglary.

## II

Defendant's second argument is that his prior exculpatory statements to Assistant State's Attorney Davidson were not admissible in the State's case in chief. Davidson had testified that he interviewed defendant at 2:45 a.m. on January 8, 1978, and that defendant made two statements relating to his activities the night of the offense. First, defendant said that he had been out on the street with his brother, but after answering a number of subsequent questions, "I don't know," he said that he really was not out on the street, but he had been home watching television with certain members of his family.

The State contends that these statements were properly admissible in its case in chief because they were false exculpatory statements and thus had independent probative value as evidence of defendant's conscious-

ness of guilt. Conversely, defendant contends that these statements should have been admitted only for impeachment if defendant gave exculpatory testimony contrary to the statements.

■■ The general rule is that "[a] defendant's false exculpatory statement has independent probative value as evidence of consciousness of guilt and is admissible." (*People v. Mitchell* (1975), 35 Ill. App. 3d 151, 162, 341 N.E.2d 153; *People v. Wilson* (1972), 8 Ill. App. 3d 1075, 291 N.E.2d 270; *United States v. Lomprez* (7th Cir. 1972), 472 F.2d 860.) *Wilson* is factually similar to the instant case. In that case, the defendant had before arrest stated "that she had no knowledge of how her husband was murdered, that she had last seen him two or three weeks prior to his death, that he had only two life insurance policies, and that she was not dating Dennis Phillips." Later, in a statement made the day after her arrest, the defendant admitted that none of the above statements were true. The court held that defendant's statements were properly admissible because they were false exculpatory statements revealing defendant's consciousness of guilt. The court reasoned that "any attempt to conceal, or otherwise to suppress evidence, or obstruct an investigation of an issue, is relevant upon the trial of that issue as tending to show a consciousness of guilt." The court rejected the defendant's contentions that the admission of her statements as substantive evidence wrongfully forced her to take the witness stand and that her statements should have been used only for impeachment purposes after she had taken the stand. 8 Ill. App. 3d 1075, 1079.

■■ In the instant case, defendant made inconsistent statements to Assistant State's Attorney Davidson. A reading of the two statements reveals that at least one was necessarily false. We conclude that the trial court properly determined that defendant's prior exculpatory statements were admissible in the State's case in chief.

Defendant claims that he was "high, sleepy and scared" at the time of his interview with Davidson and that the inconsistent statements were the result of defendant's innocent effort to correct his mistaken earlier statement. He claims that the statements were made only moments apart, and that they do not, in and of themselves, demonstrate defendant's consciousness of guilt. The general rule which we apply here holds only that a false exculpatory statement has probative value as evidence of consciousness of guilt; the false exculpatory statement is not conclusive evidence of consciousness of guilt. Defendant was not prevented from explaining the inconsistency, and in fact, he did testify to his condition at the time of the interview. The jury was able to consider his explanation together with Davidson's testimony as to defendant's statements. We find no error in the admission of these statements.

### III

Defendant's third argument is that the prosecution's cross-examination of defendant and closing argument improperly referred to his post-arrest silence. The relevant portion of this cross-examination follows:

"Q. Did you talk to any policeman while you were at the police station?

A. Not after they put me in the cell.

Q. How about the officers, Bunk and Mitchell, do you remember talking to them after they gave you your rights at the hospital?

A. Yes.

Q. What did you tell them?

A. Nothing.
* * *

Q. Mr. Puente, at the hospital they advised you of your rights?

A. Yes.

Q. They asked you questions after they advised you of your rights?

A. Yes.

Q. What?

A. They told me I was being arrested for armed robbery.

Q. Did you say anything to them?

A. No.

MR. O'HARA [Defense Counsel]: Objection.

The Court: Basis?

MR. O'HARA: He advised him of his rights at that point. He has a Fifth Amendment right.
* * *

The Court: I'll sustain the last objection.
* * *

Q. Mr. Puente, up until the time that you were in the cell, had you ever told anyone that you had been to the tavern?

A. No.

MR. O'HARA: Objection, same objection.

MR. CRANE [Prosecutor]: I am sorry, I don't understand the objection, your Honor."

The trial judge sustained this second objection after a discussion between counsel and the court outside the presence and hearing of the jury. Defendant also complains of the following comment by the prosecutor during closing argument: "[H]e [defendant] remember [sic] talking to the police."

In *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, the Supreme Court held that a due process violation occurs where a State

prosecutor, in attempting to impeach a defendant's exculpatory story told for the first time at trial, cross-examines the defendant about his failure to have told the story after receiving *Miranda* warnings at the time of his arrest. The court reasoned that every post-arrest silence is insolubly ambiguous because of the State's obligation to advise an accused of his rights. In *People v. Upshire* (1978), 62 Ill. App. 3d 248, 379 N.E.2d 38, this court noted that the *Doyle* rule has been followed closely in Illinois and that it is error for the prosecution to elicit testimony that a defendant remained silent after arrest or to comment during closing argument that the defendant failed to tell his story at a previous time. The court held that introduction of evidence showing that following arrest defendant offered no explanation and was silent as to his noninvolvement in the crime is an error of such magnitude as to require reversal.

Here the State argues that a violation of the *Doyle* rule does not occur when a defendant testifies that he was not silent after his arrest and later, when asked the contents of his conversation, claims to have been silent. Further, the State asserts that defendant waived his right to remain silent after arrest by conversing with police officers at the time of his arrest and by conversing with an assistant State's attorney after his arrest.

■■ However, assuming arguendo that the questions the prosecutor put to defendant were improper, they did not constitute error requiring reversal. (*People v. Beller* (1979), 74 Ill. 2d 514, 386 N.E.2d 857.) Objections to two of them were sustained, the jury was properly instructed to disregard such questions, and there was ample evidence of the defendant's guilt. Defendant also complains that during closing argument the prosecutor remarked that Puente remembered talking to the police. This comment referred to a question asked and answer given on the cross-examination to which no objection was made. Having found no reversible error in the cross-examination, we likewise find none in the prosecutor's referring to it in closing argument. Further, defendant did not object to this comment at trial. Failure to object to prejudicial remarks of counsel at trial constitutes a waiver (*People v. Wilson* (1980), 87 Ill. App. 3d 693, 409 N.E.2d 344), unless such remarks "were so prejudicial that defendant did not receive a fair trial or were so flagrant as to threaten deterioration of the judicial process." (*People v. Smothers* (1973), 55 Ill. 2d 172, 176, 302 N.E.2d 324.) The comment in the instant case does not fall within this exception to the waiver rule.

## IV

Defendant's fourth argument is that Assistant State's Attorney Davidson's characterization of defendant as "evasive" at a post-arrest interview (1) was improper under *Doyle*, (2) violated commonly accepted rules of evidence, and (3) usurped the function of the jury to determine the

credibility of witnesses. Defendant claims that the prosecutor's comment on this testimony during closing argument compounded the error. At trial, Davidson testified that defendant made exculpatory statements at a post-arrest interview. Defense counsel's cross-examination of Davidson called into question Davidson's ability to remember his interview with defendant. Specifically, defense counsel was able to elicit from Davidson the fact that Davidson had interviewed 1,200 arrestees in the six-month period after he interviewed defendant, that Davidson probably could not recall every question he asked in those 1,200 cases, and yet he could recall every question in the instant case. On redirect, the prosecutor asked Davidson if there was any reason why he remembered defendant and the specific questions that he asked defendant. Davidson replied, over objection:

> "Of all the people I interviewed while I was on Felony Review, I never had anyone who was arrested by the police * * * [objection overruled] * * * I never had anyone who was arrested by the police and sitting in a police station who was willing to talk to me and who was as *evasive* as this man was. He just answered I don't know to virtually every question I asked him except [objection as to the conclusion] * * *." (Emphasis added.)

Defendant claims that Davidson's testimony that defendant was evasive violates the doctrine of *Doyle v. Ohio*. We find this argument unconvincing because defendant clearly was not exercising his right to remain silent at his interview with Davidson. In fact, defendant was read his rights and said he understood before he made two inconsistent, exculpatory statements at this interview. His "I don't know" answers were made in response to questions attempting to clarify his exculpatory statements.

Defendant also contends that Davidson's testimony as to defendant's evasiveness was improper opinion evidence. He relies upon a line of cases holding that a witness may not state his opinion or conclusion concerning an out-of-court statement, but he is required to recite the statement as nearly as possible. *People v. Carter* (1962), 24 Ill. 2d 413, 416, 182 N.E.2d 197; *People v. Linkogle* (1977), 54 Ill. App. 3d 830, 833, 368 N.E.2d 1075.

The State contends that its redirect examination of Davidson was proper to rehabilitate his earlier testimony, and cites *People v. Sanchez* (1979), 73 Ill. App. 3d 607, 610, 392 N.E.2d 378, which stated: "On redirect examination a witness may be asked questions designed to remove unfavorable inferences or impressions raised by the cross-examination." We find no error in the prosecutor asking Davidson on redirect whether there was any reason why he remembered his interview with defendant.

■■ Further, where opinion evidence is improperly admitted in evidence, such admission is not necessarily prejudicial where the conclusion ad-

duced is obvious. (*People v. Sparkman* (1979), 68 Ill. App. 3d 865, 870, 386 N.E.2d 346.) In *Sparkman*, a police officer, on direct examination, testified that a defense witness first said that she saw the robbery from the first floor of her building and then stated that she observed the incident from her third-floor apartment. On cross-examination, the officer testified that he did nót make out a report concerning her statements. On redirect, he was asked why he did not do so, and he answered, over objection, "Too many conflicting stories and she was unbelievable at the time." The court held that defendants were not denied a fair trial by the court's failure to strike *sua sponte* the opinion of the officer.

Davidson's conclusion that defendant was evasive at the post-arrest interview was also obvious. There is evidence supported in part by defendant's own testimony, that he answered, "I don't know" to virtually every question asked in the interview. Under the circumstances of this case, we conclude that neither Davidson's opinion testimony nor the prosecutor's closing argument denied defendant a fair trial. We find no reversible error.

## V

■■ Defendant's fifth argument is that the prosecution improperly asked defendant if Assistant State's Attorney Davidson was a liar. The relevant section of the State's cross-examination of defendant follows: ·

"Q. Do you remember being brought into a room and talking to Mr. Davidson who was in court, the State's Attorney?
A. Yes, sir.
\* \* \*

Q. Did you tell Mr. Davidson that you were out with your brother?
A. No, sir.
\* \* \*

Q. Did you then say that no, you weren't out with your brother, but that you were at home with your brother, mother and father?
A. No, sir.
\* \* \*

Q. Well, Mr. Puente, Mr. Davidson testified in court, is he a liar?
A. No, sir.
\* \* \*

Q. So you are calling him a liar, is that right?
MR. O'HARA: Objection.
THE COURT: The jury is instructed to disregard that."

"[I]t is improper to attempt to force a defendant to judge the veracity of a witness against him since that represents an invasion of the province of the jury." (*People v. Hastings* (1979), 72 Ill. App. 3d 816, 823, 390

N.E.2d 1273; *People v. Riley* (1978), 63 Ill. App. 3d 176, 379 N.E.2d 746; *People v. Hicks* (1971), 133 Ill. App. 2d 424, 273 N.E.2d 450.) The questions addressed to defendant asking him whether Davidson was a liar were improper. We note that the jury was instructed to disregard the question the second time it was asked. While we do not condone this type of questioning, we do not believe that this error warrants the granting of a new trial, given the evidence presented in this case, the trial court's treatment of this questioning, and the clear inconsistency between defendant's testimony and Davidson's testimony. *Hastings*, 72 Ill. App. 3d 816, 823.

■■ Defendant also contends that the prosecution's closing argument comment that the defense had attacked State's witness Davidson as not telling the truth, was improper. We conclude that the State's comment was based on evidence presented at trial and proper. Defendant had testified that he never told Davidson the statements that Davidson attributed to defendant at the post-arrest interview, and defense counsel, when cross-examining Davidson, called into question Davidson's ability to remember the interview. "Arguments and statements based on the facts appearing in the proof or on legitimate inferences deducible therefrom do not transcend the bounds of legitimate argument." *People v. Halteman* (1956), 10 Ill. 2d 74, 83, 139 N.E.2d 286; *People v. Walsh* (1980), 80 Ill. App. 3d 754, 767, 400 N.E.2d 587.

## VI

Defendant's sixth argument is that the State's closing argument was improper and prejudicial because the argument switched the burden of proof to defendant. Specifically, defendant contends that the State's closing argument included several improper remarks concerning the absence of three potential alibi witnesses—Jesse Puente and the two young women, Becky and Tracy—who defendant testified attended a party with him on the night in question. Defendant argues that the prosecution endeavored to have the jury draw the inference that the testimony of Jesse Puente and the two young women would have been adverse to defendant, and for that reason defense counsel had not called them as witnesses. Defendant relies primarily on *People v. Munday* (1917), 280 Ill. 32, 117 N.E. 286, and *People v. Smith* (1966), 74 Ill. App. 2d 458, 221 N.E.2d 68. *Munday* held that the trial court erred in permitting counsel for the State to refer, in closing argument, to the fact that plaintiff in error's co-defendants had not been called as witnesses. *Smith* held that the State's closing argument comment on the absence of a certain witness was unjustified and highly prejudicial. Defendant claims that the two young women, whose last names were unknown to defendant, were not accessible to him or the State, and that Jesse Puente was as accessible to

the prosecution as he was to the defense, and reference to their absence was improper.

■■ ■ We are of the opinion that the prosecution's comments on the absence of Jesse Puente and the two young women were not error. Illinois courts have recognized a distinction between a defendant's failure to call an alibi witness and his failure to call other witnesses. (*People v. Beller* (1979), 74 Ill. 2d 514, 526, 386 N.E.2d 857.) It is generally improper for the prosecution to comment on a defendant's failure to present witnesses when such witnesses are as accessible to the State as they are to the defendant. However, when alibi witnesses are injected into a case by the defendant, they are deemed unavailable to the prosecution, and comment on the failure of such witnesses to testify is proper. (*People v. Jackson* (1979), 79 Ill. App. 3d 660, 398 N.E.2d 906.) In *People v. Blakes* (1976), 63 Ill. 2d 354, 348 N.E.2d 170, our supreme court held that where the defendant testified that he was at a private club at the time of the robbery, and on cross-examination he named five people who were at the club on the night in question, the prosecutor's closing argument comments that persons defendant said were in the club that night had not appeared to testify and that the jury had the right to consider the absence of those people at trial were not error. The court said: "The prosecutor here was referring only to the obvious in commenting that the defense had not produced anyone from the club, including the men the defendant named in his testimony, to testify." 63 Ill. 2d 354, 360.

On the basis of these authorities, we conclude that there was no error in the comments on the absence of testimony from Jesse Puente, Becky and Tracy. The defendant injected the names of these individuals into the case in explaining his activities on the night in question.

## VII

Lastly, defendant argues that the sentence imposed by the trial court was excessive. He was sentenced to two 15-year terms in the Illinois Department of Corrections for the offenses of attempt murder and armed robbery, the sentences to be served concurrently. He contends that in light of his history and character, the trial court abused its discretion in imposing such a lengthy sentence.

■■ Pursuant to Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1979, ch. 110A, par. 615(b)(4)), a reviewing court may reduce the punishment imposed by the trial court. An appellate court's discretion to reduce a sentence, however, is not unlimited. "[A]bsent an abuse of discretion by the trial court a sentence may not be altered upon review." (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) A reviewing court will not substitute its judgment for that of the trial court merely because

the former would have balanced the appropriate sentencing factors differently. *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541.

■■ Defendant contends that the trial court did not give serious consideration to his youth, lack of previous criminal background, good family relationship, work record and other attributes. This contention is not supported by the record. In announcing the sentence, the trial judge explained that he had considered the presentence report which set forth defendant's family background and social history, the evidence presented at trial, the statutory factors in aggravation and mitigation, the arguments of the attorneys in aggravation and mitigation, and the fact that defendant was without any substantial criminal record. The judge continued:

> "And Mr. Puenta [*sic*], it is my considered judgment weighing all these factors and considering the fact that you are 20 [years of age]. But also considering the victim in this case and the public at large.
>
> Considering the brutality of the offense and the attack of another individual on the streets of Chicago.
>
> It is my sentence [the judge imposed the sentence described above] * * *."

The evidence presented at trial described a shockingly brutal offense. Daniel Ortega was stabbed in the throat three times and robbed. Defendant elected to be sentenced under the sentencing provisions of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1001—1—1 *et seq.*), which became effective February 1, 1978, and under these provisions the trial judge is authorized to consider whether "the defendant's conduct caused or threatened serious harm." (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2(a)(1).) The sentence imposed is severe, but given the brutal nature of the crime, we cannot conclude that the trial court abused its discretion in sentencing defendant.

For the reasons stated above, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

RIZZI, P. J., and McGILLICUDDY, J., concur.