THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
NATHANIEL HOPKINS, Defendant-Appellant.

First District (3rd Division)    No. 80-1546

Opinion filed June 2, 1982.

James J. Doherty, Public Defender, of Chicago (Donald S. Honchell, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Richard F. Burke, and Theodore F. Burtzos, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE WHITE delivered the opinion of the court:

Defendant, Nathaniel Hopkins, was charged by a seven-count information with the offenses of rape, armed violence based upon rape, two counts of deviate sexual assault, aggravated kidnapping, unlawful restraint, and armed violence based upon unlawful restraint. Following a jury trial, he was found guilty of all seven counts, and judgment was entered on the verdicts. Defendant was sentenced to concurrent terms of imprisonment of 15 years for rape, 15 years for armed violence based upon rape, 15 years for each count of deviate sexual assault, and 10 years for aggravated kidnapping. No sentence was imposed for unlawful restraint or armed violence based upon unlawful restraint. On appeal, defendant contends that various prosecutorial errors deprived him of a

fair trial, and in the alternative, that certain convictions must be vacated as part of other offenses and that he is entitled to a corrected mittimus to reflect the sentence for aggravated kidnapping announced by the trial judge.

There is no dispute that defendant had sexual relations with the complainant on the night in question. The issues to be decided by the jury were whether the complainant consented to the activities, and, if not, how many offenses occurred.

The complainant, a 19-year-old student at the time of trial, testified that at 10:30 or 11 p.m. on January 13, 1979, she started to walk home from a friend's house. The weather conditions were blizzard-like, and she lived about 10 blocks from her friend's house. As she was walking, she observed a dark brown van, and as the van passed her, the driver waved to her and stopped in front of her. She was not hitchhiking, but she did approach and open the passenger door of the van. Defendant was the driver of the van, and she told him that she lived only a few blocks away. He offered her a ride, which she accepted. When they arrived at an intersection located one block from complainant's home, she told him she wanted to be let out of the van because the street was not plowed. However, defendant proceeded one-half block down the street. Then defendant told her that the van was stuck in the snow and that he was going to get a shovel from the back of the van. Defendant went into the back of the van, but five or 10 seconds later, he returned with a knife, which complainant described as 20 inches long with a long blade. He pointed the knife at her throat and told her to get into the back of the van. Then he pulled her by the arm into the back of the van and ordered her to lie face down on the floor of the van. When she did so, he tied her wrists tightly behind her back with her scarf. He also tied her ankles together, and tied a piece of cloth around her mouth and head. Then defendant got back into the driver's seat and drove for about 15 or 20 minutes.

Defendant then turned off the engine and entered the back of the van. He told her that she had better do as she was told, and subsequently untied her wrists, ankles, and the gag in her mouth. At this time she did not know where the knife was. Then he ordered her to remove her pants and undergarments, which she did. He proceeded to have intercourse with her, despite her protests that she did not want to do it and that she was only 17 years old, when, in fact, she was 18 at the time. Her attempts to push him away were unsuccessful. Afterward, defendant told her to sit on a bunk in the back of the van. She covered herself with a blanket, and she and defendant had a conversation for 15 or 20 minutes. During this conversation, defendant was drinking beer and wine. Although defendant offered her some wine, she merely held the bottle to her lips and drank little, if any, of it.

Toward the end of this conversation, complainant observed the knife lying on the floor beneath the passenger seat of the van. After the conversation, defendant told the complainant to remove the remainder of her clothing and to lie on the bunk. Defendant then performed cunnilingus on her despite her attempts to push him away. When he finished, he proceeded to have intercourse with her a second time despite her protests.

After this second act of intercourse, defendant and complainant dressed and returned to the driver's and passenger's seats in the front of the van. They conversed, and when defendant pressed her for her telephone number, she wrote on a piece of paper her name and the number of a Dunkin Donuts store where she worked.

Then, defendant told her that he wanted to have intercourse a third time. He pulled her out of her seat into the back of the van and ordered her to disrobe, which she did. He then proceeded to perform cunnilingus on her a second time over her protests, and when this was completed, he forced her to perform fellatio on him. After this, defendant had intercourse with complainant a third time despite her protests that she did not want to do it and her attempts to push him away. Subsequently, defendant permitted complainant to dress, which she did. She then took the knife from the floor and ran out the passenger's side door of the van.

Complainant ran to the nearest busy street, where she observed a snow plow driving toward her. She informed the driver of the snow plow that she had been raped, and he made a call on a radio. She then entered the vehicle with the driver and another man. They drove to the street where the van was, and as the van drove toward them, it collided with the plow. She saw defendant when the police took him from the van. Afterwards, complainant was taken to the Rosemont police station and to the emergency room of Resurrection Hospital.

There is no need to discuss the other evidence presented at trial in detail. Complainant's testimony as to her escape from the van and the collision was corroborated by Anthony Fontana, who was employed by the Village of Rosemont and was plowing snow in a jeep with one Vito Corriero on the night in question. He testified in part that at approximately 2:30 a.m., they stopped their jeep for a girl who said she had been raped and who was crying and shivering. The girl showed them the knife which she claimed she had taken from the van. He also testified that about 30 seconds after the collision, the police arrived and pulled defendant out of the van. Officer George Albergo of the Rosemont police department testified that at 2:30 a.m. on January 14, 1979, he responded to a communication received over police radio. Upon arriving at the scene, he apprehended a black man whom he identified as the defendant and placed him under arrest. He also recovered the knife from a snowbank.

Laura Schultz, a registered nurse at Resurrection Hospital, testified that she was working at approximately 3:55 a.m. on January 14, 1979, when the police arrived with the complainant, who was crying. She and a doctor examined the complainant. Schultz observed red, raw areas on the insides of both of the complainant's wrists and a small cut on her left arm. Officer Lee Mayer of the Rosemont police department testified to a statement made by defendant to him on January 14, 1979, in which defendant stated, in part, that complainant had agreed to have sex with him. The State and defendant stipulated that vaginal specimens taken from complainant showed the presence of semen containing spermatozoa; that there was blood on the complainant's panties; that hair fragments of negroid origin were removed from the panties and scarf; and that defendant was 25 years old at the time of trial.

The only defense witness was defendant. Although there are discrepancies between his testimony and that of complainant, we need not summarize his description of the events in question, except to state that according to his testimony, the sexual relations he had with the complainant were consensual.

## I

Defendant's first argument is that various prosecutorial errors deprived him of a fair trial. The first alleged error is that the prosecution improperly cross-examined defendant as to the veracity of two prosecution witnesses, Officer Mayer and Officer Albergo. Specifically, defendant was asked if the officers were "wrong" or "incorrect" as to certain portions of their testimonies.

■■ Illinois case law provides that "it is improper to attempt to force a defendant to judge the veracity of a witness against him since that represents an invasion of the province of the jury." (*People v. Puente* (1981), 98 Ill. App. 3d 936, 946, 424 N.E.2d 775; *People v. Hastings* (1979), 72 Ill. App. 3d 816, 823, 390 N.E.2d 1273; *People v. Hicks* (1971), 133 Ill. App. 2d 424, 434, 273 N.E.2d 450.) The cross-examination complained of clearly violated this principle. The State responds that defendant waived this issue by failing to raise it in his written motion for a new trial. (See *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856.) However, even assuming that this issue had not been waived, we conclude that the error committed did not contribute to defendant's conviction and was, therefore, harmless. Significantly, neither witness who was the subject of this questioning testified to the critical issue of consent or gave testimony relevant to the question of how many offenses were committed. While we do not condone this type of questioning, we cannot conclude that this error warrants the granting of a new trial in this case. *People v. Puente* (1981), 98 Ill. App. 3d 936, 947.

Secondly, defendant argues that it was improper for the State, in the presence of the jury, to object to defendant's handling the knife allegedly utilized to commit the offense, while he was testifying as a witness. The record shows that defense counsel asked defendant to identify the knife, which had been marked as an exhibit of the State. At this point, the prosecution objected to defendant holding the exhibit, and the court instructed defense counsel to hold the exhibit and show it to him, but not to hand it to him. Defendant then identified the knife as belonging to him. Relying on *People v. Collins* (1980), 85 Ill. App. 3d 1056, 407 N.E.2d 871, defendant contends that this objection stripped him of the presumption of innocence by making it appear to the jury that defendant was a dangerous man.

It cannot be doubted that a trial court, in the exercise of its duty to ensure orderly proceedings, may take reasonable safety precautions. (*People v. Collins* (1980), 85 Ill. App. 3d 1056, 1059; see *People v. Boose* (1977), 66 Ill. 2d 261, 266, 362 N.E.2d 303.) But the trial court may provide for such measures only when and to the extent justified by the danger of a significant interference with the orderly progress of the trial, and a hearing should be had outside the presence of the jury to determine the need for and propriety of any special treatment to be given to a defendant. *People v. Collins* (1980), 85 Ill. App. 3d 1056, 1059-60; *People v. Boose* (1977), 66 Ill. 2d 261, 266.

In *Collins*, the trial court, after objection by the prosecutor, forbade the defendant, who was conducting his own defense, to handle in court a shotgun that had been introduced as an exhibit. On appeal, this court held that such order of the trial court was an abuse of discretion because there had been no hearing outside the presence of the jury to demonstrate the necessity of the special treatment in that case. *Collins* is distinguishable in that a knife poses a greater danger in the courtroom than an unloaded shotgun. The *Collins* court specifically noted that a shotgun, so long as it is unloaded, is no more dangerous than any piece of furniture that could be used as a club, and emphasized that there was no showing of any danger to order or safety in that case. (*People v. Collins* (1980), 85 Ill. App. 3d 1056, 1059-60.) Such simple precautionary measures cannot be taken with a 20-inch knife. Furthermore, the defendant in *Collins* was conducting his own defense, unlike defendant here, and the court in *Collins* emphasized that it was the duty and right of trial counsel to examine a shotgun introduced as an exhibit. Here, no restrictions were placed on defense counsel with respect to the knife.

■■ We believe that it would have been better if the State had made its objection and a hearing had been held outside the presence of the jury. However, we also note that this alleged error was an isolated incident in that it was never referred to elsewhere in the trial; that defense counsel

did not object at the time, thereby emphasizing the prohibition to the jury; and that defendant has not shown that he was impeded in presenting his case to the jury by the State's objection. Under these circumstances, we must conclude that any error that occurred was harmless beyond a reasonable doubt.

Thirdly, defendant complains that the following comment made by the prosecution in closing argument was improper because it found no support in the evidence:

"The defendant testified that he lived at that address on 55th Street, mother, brothers and sisters. He says he was married but that his wife didn't live at that address with him at that time. I submit to you, ladies and gentlemen, that very possibly Nathaniel Hopkins not living with his wife had not had sex for a while. Nathaniel Hopkins went to work not out of a devotion for duty so early, but he went—

[Defense counsel]: I'm going to object to this.

THE COURT: State your objection.

[Defense counsel]: Well, my objection is that it is not supported by the evidence.

THE COURT: Objection overruled.

[Prosecutor]: He did not go to work out of devotion of duty. He left for work early because he was going to get sex any way he could * * *."

Defendant's testimony indicated that he lived on that street with his mother, sister and brother and that he was not cohabiting with his wife at the time of the offense.

■■ "Arguments and statements based on the facts appearing in the proof or on legitimate inferences deducible therefrom do not transcend the bounds of legitimate argument." (*People v. Halteman* (1956), 10 Ill. 2d 74, 83, 139 N.E.2d 286; *People v. Puente* (1981), 98 Ill. App. 3d 936, 947, 424 N.E.2d 775.) We feel that the comment that defendant very *possibly* had not had sex for awhile was a fair inference to be drawn from defendant's testimony that he did not cohabit with his wife at the time of the offense. Further, we believe that the comment that defendant was going to get sex any way he could was a fair inference deducible from complainant's testimony. Even assuming that these comments were improper, it is well settled that improper remarks during closing argument do not constitute reversible error unless they result in substantial prejudice to the accused. (*People v. Nilsson* (1970), 44 Ill. 2d 244, 248, 255 N.E.2d 432, *cert. denied* (1970), 398 U.S. 954, 26 L. Ed. 2d 296, 90 S. Ct. 1881; see *People v. Baptist* (1979), 76 Ill. 2d 19, 29, 389 N.E.2d 1200.) We are of the opinion that these comments could not have been a material factor in defendant's conviction and therefore cannot constitute reversible error.

Fourthly, defendant contends that the following comment by the prosecution in rebuttal closing argument was improper because it had the effect of minimizing the State's burden of proof at trial:

"You just heard [defense counsel] * * * say that the State has the burden of proof in this case and, of course, that is true. It is our burden and it is a burden which we gladly accept. Of course, it is not an impossible burden, it is a burden that everyday in Cook County is met by the people of the State of Illinois, not only Cook County, but every county and every state in the United States."

A similar closing argument comment was held improper in *People v. Martinez* (1979), 76 Ill. App. 3d 280, 285, 395 N.E.2d 86, because it "had the effect of lessening the importance of the State's burden of proof by implying that reasonable doubt was merely a pro-forma or minor detail."
■■ The State responds that defendant waived this issue by failure to object to the comment during argument and by failure to include it in his written motion for a new trial. (*People v. King* (1977), 66 Ill. 2d 551, 559, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273; *People v. Pickett* (1973), 54 Ill. 2d 280, 282, 296 N.E.2d 856), and that this comment was invited by defense counsel's comments on the burden of proof. We do not believe that defense counsel's comment that the State has the burden to go forward with the evidence was an invitation to this improper comment. (See *People v. Hamilton* (1980), 80 Ill. App. 3d 794, 805, 400 N.E.2d 599.) However, even assuming that this issue had not been waived, we conclude that the error committed did not contribute to the jury's verdict and was harmless beyond a reasonable doubt. *Martinez* is not controlling because in that case, the appellate court reversed on other grounds and did not hold that the prosecutorial comment similar to the one in issue, standing alone, could be considered reversible error. *People v. Ayala* (1981), 96 Ill. App. 3d 880, 883-84, 422 N.E.2d 127.
■■ Defendant also contends that the cumulative effect of these alleged errors denied him a fair trial and requires that he be granted a new trial. (See *People v. Miles* (1980), 82 Ill. App. 3d 922, 932, 403 N.E.2d 587.) We disagree. The testimony of the complaining witness in this case was clear and convincing as to both the nature of defendant's acts and the lack of consent on her part. Furthermore, other corroborating circumstances support the conclusion that the sexual relations between defendant and complainant were not consensual. First, the nurse's testimony that she observed red, raw areas on both of complainant's wrists corroborated complainant's testimony that defendant had tied her hands with her scarf. Secondly, the fact that the victim ran from the van with defendant's knife was corroborated by Fontana, and this fact is consistent with complainant's testimony that she was abducted at knifepoint and sexually assaulted.

Given the convincing nature of the State's proof, we are compelled to hold that the alleged errors, whether viewed individually or cumulatively, were harmless beyond a reasonable doubt.

## II

Alternatively, defendant argues that his convictions for rape, unlawful restraint, armed violence based upon unlawful restraint, and one count of deviate sexual assault must be vacated as parts of other offenses. First, defendant contends that his convictions of rape and armed violence based upon rape both cannot stand because they were predicated on the same unlawful acts, and that the conviction for rape should be vacated.

Although appellate courts in Illinois have handed down conflicting opinions on the issue of whether a defendant can be convicted of both armed violence and its underlying felony (*People v. Pearson* (1981), 102 Ill. App. 3d 732, 738-41, 430 N.E.2d 304 (Downing, J., concurring in part and dissenting in part)), our supreme court, in its recent opinion in *People v. Donaldson* (1982), 91 Ill. 2d 164, clarified the law on this issue. In *Donaldson*, defendant had been convicted of attempted murder, aggravated battery causing great bodily harm, aggravated battery causing permanent disfigurement, aggravated battery using a deadly weapon, and armed violence based upon aggravated battery causing great bodily harm. In the supreme court, no issue was raised regarding the attempted murder conviction, and the parties agreed that the three shots which struck the victim constituted three separate acts and that each act could be the basis for conviction of a separate and distinct offense. The only question before the court was whether the three convictions of aggravated battery and the conviction for armed violence could stand, considering that the four offenses had been carved from only three distinct physical acts. In holding that defendant's conviction for aggravated battery causing great bodily harm should be vacated, the court stated:

> "In the absence of a clear legislative expression to the contrary we hold that multiple convictions for both armed violence and the underlying felony cannot stand where a single physical act is the basis for both charges. A defendant is prejudiced 'where more than one offense is carved from the same physical act.' [Citations.] Here convictions for both armed violence and aggravated battery causing great bodily harm were improper. Judgment should have been entered and sentence imposed only on the more serious offense. [Citation.]" (91 Ill. 2d 164, 170.)

In reaching this conclusion, the supreme court stated that the "armed violence statute enhances the mandatory minimum sentence to be imposed upon conviction of a felony." (91 Ill. 2d 164, 169.) We note, however, that the armed violence statute would not enhance the manda-

tory minimum penalty where the underlying felony is a Class X felony such as rape.

We are of the opinion that *Donaldson* does not prohibit convictions for both rape and armed violence based on rape in the instant case, because there were three clearly divisible physical acts of rape here. In fact, between the first and second acts of intercourse, complainant testified that she and defendant had a conversation for 15 or 20 minutes and that defendant consumed alcoholic beverages during that time. Between the second and third acts of intercourse, defendant and complainant dressed, returned to the front of the van, and had another conversation.

The standard for determining when multiple convictions and concurrent sentences are permissible was established in the leading case of *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273:

> "Prejudice results to the defendant only in those instances where more than one offense is carved from the same physical act. Prejudice, with regard to multiple acts, exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. Multiple convictions and concurrent sentences should be permitted in all other cases where a defendant has committed several acts, despite the interrelationship of those acts. 'Act,' when used in this sense, is intended to mean any overt or outward manifestation which will support a different offense. We hold, therefore, that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered." (66 Ill. 2d 551, 566.)

The test set forth in *King* was recently applied by our supreme court in *People v. Myers* (1981), 85 Ill. 2d 281, 426 N.E.2d 535. In *Myers*, the court upheld defendant's convictions and concurrent sentences for attempted murder and armed violence based upon aggravated battery. In that case, the court found that there were two separate invasions of the victim's body and not one physical act, where the defendant wounded the victim with a knife, and then, after an intervening attack on a third person, inserted the knife a second time in the same area of the victim's body.

■■ Illinois appellate court decisions, construing *King*, have held that a defendant can be convicted and sentenced for both a greater offense and a lesser included offense, where the act constituting the greater is clearly divisible from the act constituting the lesser, or where there is a sufficient interval of time between such acts. This is so even though the acts are a part of the same criminal transaction. (*People v. Olbrot* (1982), 106 Ill.

App. 3d 367, ___ N.E.2d ___; *People v. Cross* (1980), 84 Ill. App. 3d 868, 873, 406 N.E.2d 66.) In *Cross*, the appellate court upheld a defendant's convictions and sentences for both attempt murder and aggravated battery where the defendant struck the victim and after an interval, his accomplice shot the victim. Although the theory of accountability was employed in *Cross* and *Olbrot* in finding that there were separate acts for which separate convictions and sentences were proper, we are of the opinion that the testimony of complainant in the instant case established clearly divisible acts of rape separated by a sufficient interval of time. Accordingly, we conclude that there was sufficient evidence to sustain defendant's convictions and sentences for both rape and armed violence based upon rape.[1]

Secondly, defendant contends that his conviction for unlawful restraint should be vacated as a lesser included offense of the crime of aggravated kidnapping, and that since the unlawful restraint conviction should be vacated, his conviction for armed violence based upon unlawful restraint must also be set aside. The State responds that the acts which constituted aggravated kidnapping were separate from the acts of unlawful restraint and that both convictions may stand. Specifically, the State argues that the offense of aggravated kidnapping was completed after the second act of intercourse, and that a separate act of unlawful restraint occurred when defendant subsequently pulled her into the back of the van. The State cites no cases to support this position, and we do not feel that this criminal transaction can be so easily compartmentalized.

■■ We believe that convictions for both aggravated kidnapping and unlawful restraint are not proper under *King*, because the acts constituting each offense are not clearly divisible. Under *King*, where a defendant has performed multiple acts, prejudice exists only when the defendant is convicted of more than one offense, some of which are, by definition, lesser included offenses. Here, defendant's conviction for aggravated kidnapping was based upon a count in the information which charged that he, knowingly by force and threat of imminent force, carried the complainant from one place to another with intent secretly to confine her against her will and committed the felony of rape upon her. His conviction for unlawful restraint was based upon a charge that he knowingly without legal authority detained the complainant. Under these circumstances, unlawful restraint is a lesser included offense of aggravated kidnapping, because all of the elements of unlawful restraint are included within aggravated kidnapping. (See *People v. Smith* (1980), 78 Ill. 2d 298, 306, 399 N.E.2d 1289; Ill. Rev. Stat. 1979, ch. 38, pars. 10—1,

---

[1] In reaching this decision, we are not holding that rape is a lesser included offense of armed violence based upon rape.

10—2, 10—3.) Therefore, under *King*, we vacate the conviction for unlawful restraint.[2]

■■ Armed violence based upon unlawful restraint is not a lesser included offense of aggravated kidnapping, at least under the circumstances presented here, because the charge of armed violence required proof of an additional element which the charge of aggravated kidnapping did not. In order to commit armed violence a person must be armed with a dangerous weapon. (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2.) The count of the information charging defendant with aggravated kidnapping required no such proof. Accordingly, defendant has presented no persuasive argument for vacating his conviction of armed violence based upon unlawful restraint.

The State requests that this case be remanded to the circuit court for sentencing on the unlawful restraint and armed violence based upon unlawful restraint convictions. We have already vacated the conviction for unlawful restraint; however, on the authority of *People v. Scott* (1977), 69 Ill. 2d 85, 88, 370 N.E.2d 540, we remand the cause to the circuit court for entry of a sentence on the armed violence based upon unlawful restraint conviction.

Thirdly, defendant maintains that one of his convictions of deviate sexual assault must be vacated because each count charged a violation of the same statute by a different means. (See Ill. Rev. Stat. 1979, ch. 38, par. 11—3.) One count of the information for deviate sexual assault charged oral copulation. The other charged cunnilingus.

Defendant relies primarily on *People v. Cox* (1972), 53 Ill. 2d 101, 291 N.E.2d 1, and *People v. Short* (1978), 62 Ill. App. 3d 733, 379 N.E.2d 360. In *Cox*, our supreme court held that a conviction and sentence imposed on one of two counts of indecent liberties with a child could not stand, where the two counts were based upon a single transaction, charged two acts almost simultaneous in time, and involved a single victim, and each act was in violation of a single section of a criminal statute. Relying on *Cox*, the appellate court, in *Short*, vacated a judgment and sentence imposed by the trial court on a count of deviate sexual assault for fellatio and affirmed the conviction and sentence on the charge of deviate sexual assault for cunnilingus. See also *People v. Tate* (1976), 37 Ill. App. 3d 358, 359-61, 346 N.E.2d 79.

■■ We note that the rationale of *Cox* has been questioned in the recent opinion in *People v. Zeiger* (1981), 100 Ill. App. 3d 515, 517, 426 N.E.2d 1229. We, however, do not reach this issue because we conclude that the "almost simultaneously" rule expressed in *Cox* is not applicable to the

---

[2]Although no sentence was imposed for unlawful restraint, this court has power to vacate incomplete judgments. *People v. Lilly* (1974), 56 Ill. 2d 493, 496, 309 N.E.2d 1.

instant case. (See *People v. Armstrong* (1979), 77 Ill. App. 3d 916, 921, 396 N.E.2d 845, *cert. denied* (1980), 447 U.S. 926, 65 L. Ed. 2d 1120, 100 S. Ct. 3022.) Here, the first act of cunnilingus and the act of fellatio were separated in time by an act of intercourse, by defendant and complainant getting dressed and holding a conversation, and by a second act of cunnilingus. Thus, *Cox* is inapposite because the alleged sex acts were not almost simultaneous but were, in fact, separate and distinct. Therefore, we conclude that both convictions for deviate sexual assault were proper.

## III

Defendant's final argument is that he is entitled to the issuance of a corrected mittimus which reflects the sentence announced by the trial court. The transcript of the sentencing hearing shows that defendant received a prison term of 10 years for the conviction of aggravated kidnapping; however, the mittimus indicates that defendant was sentenced to 15 years' imprisonment for that conviction. The State agrees that defendant is entitled to a corrected mittimus, and both agree that this cause should be remanded to the circuit court for the issuance of a corrected mittimus reflecting a sentence of 10 years for aggravated kidnapping. We concur in this conclusion. See *People v. Pittman* (1979), 75 Ill. App. 3d 683, 689, 394 N.E.2d 702; *People v. Felters* (1977), 48 Ill. App. 3d 623, 626-27, 363 N.E.2d 606; *People v. DePratto* (1976), 36 Ill. App. 3d 338, 342, 343 N.E.2d 628.

Accordingly, the judgments entered by the circuit court of Cook County for rape, armed violence based upon rape, two counts of deviate sexual assault, aggravated kidnapping and armed violence based upon unlawful restraint are affirmed; the judgment for unlawful restraint is vacated; and the cause is remanded for entry of a sentence on the armed violence based upon unlawful restraint conviction and for the issuance of a corrected mittimus.

Affirmed as modified.

McNAMARA and McGILLICUDDY, JJ., concur.